CHARLES L. VAUGHN AND DOROTHY B. VAUGHN, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 916-78.     Filed July 21, 1986.

James M. Morgan, Jr., Rex M. Lamb III, and Thomas B. Wells, for the petitioners.

Charles B. Hanfman, for the respondent.

---

## SUPPLEMENTAL OPINION

CHABOT, *Judge*: This case is before us on petitioners' motion for reconsideration of our opinion in the above-entitled case set forth at 81 T.C. 893 (1983) (hereinafter sometimes referred to as *Vaughn I*). See Rule 161, Tax Court Rules of Practice and Procedure. In *Vaughn I*, we made findings of fact which we adopt for purposes of this supplemental opinion. However, for clarity, we begin with a brief recital of the facts pertinent to this supplemental opinion.

For some time before 1973, petitioner Charles L. Vaughn (hereinafter sometimes referred to as Charles) owned all of the stock of Perry-Vaughn, Inc. (hereinafter sometimes referred to as Perry). Perry owned several tracts of land, on which it built apartment complexes. On part of one of these tracts, Perry built the Netherlands I and II Apartments. Perry leased another part of the latter tract to petitioners. Petitioners built the Netherlands III Apartments on the leased land. Petitioners formed a two-person partnership to operate the Netherlands III Apartments. On December 22, 1972, Charles transferred his partnership interest to Steven W. Vaughn (hereinafter sometimes referred to as Steven), the son of petitioner Dorothy B. Vaughn (hereinafter sometimes referred to as Dorothy). On January 29, 1973, Dorothy transferred her partnership interest to Steven.

On or about February 2, 1973, Charles transferred all of the outstanding stock in Perry to Steven, pursuant to a contract styled "Installment Sales Contract" (hereinafter sometimes referred to as contract III). To pay for the stock, Steven gave Charles a promissory note (hereinafter sometimes referred to as note III) in the principal amount of $660,000, requiring 240 monthly payments of $4,355.70, beginning April 1, 1973. Note III provides that it is nonrecourse; i.e., Steven is not personally liable on the debt and Charles is to look only to the collateral for payment. Contract III provides that, if Steven were to liquidate Perry and resell the assets he received in the liquidation, then Steven would have to place the net proceeds of the sale in escrow.[1] Under contract III, the proceeds of the assets sale

---

[1]The sales of the partnership interests also were on the installment basis. The contracts of sale of the partnership interests do not include escrow provisions.

would be held in escrow under the terms set forth in a document styled "Escrow Agreement" (hereinafter sometimes referred to as the escrow agreement). Under the escrow agreement, payments under note III were to be made directly from the escrow funds.

Perry was subsequently liquidated and its assets were transferred to Steven. On May 31, 1973, Steven sold the Netherlands I, II, and III Apartments and the land on which they are located to an unrelated person. Notwithstanding the provisions of contract III, Steven did not place in escrow any of the proceeds of this sale.

Petitioners contended that the form of the three transfers to Steven reflected the substance of the transactions. On their tax returns, petitioners treated each of the transfers to Steven as a sale and reported the gain therefrom on the installment method. Respondent contended that each of the transfers to Steven should be disregarded, that Charles should be taxed on the liquidation of Perry, and that petitioners should be treated as having made the May 31, 1973, sale to the unrelated person. Respondent contended that petitioners were not eligible to use the installment method to report their gains.

We agreed in *Vaughn I* with petitioners that the form of the three transfers to Steven reflected the substance of the transactions. Accordingly, (1) Charles is not to be taxed on the liquidation of Perry, (2) petitioners are not to be treated as having made the May 31, 1973, sale to the unrelated person, and (3) with one exception, petitioners are permitted to report on the installment basis their gains from the three transfers to Steven. The one point as to which we partially agreed with respondent is our holding in *Vaughn I* that Charles is to be treated as having received in 1973 the amount of the proceeds of the May 31, 1973, sale, that were to have been placed in escrow as provided for in contract III.

The *Vaughn I* holding which petitioners seek reconsideration of is the one point on which we partially agreed with respondent.

The granting of a motion for reconsideration rests within the discretion of the Court. See, e.g., *Louisville & N. R. Co. v. Commissioner*, 641 F.2d 435, 443-444 (6th Cir. 1981), affg.

on this issue 66 T.C. 962 (1976). The Court generally denies such a motion unless unusual circumstances or substantial error is shown. *Estate of Bailly v. Commissioner*, 81 T.C. 949, 951 (1983); *Haft Trust v. Commissioner*, 62 T.C. 145 (1974), affd. on this issue 510 F.2d 43, 45 n. 1 (1st Cir. 1975). In the instant case, we grant petitioners' motion because our careful reexamination of our opinion in *Vaughn I* leads us to conclude that (1) we erred therein and (2) that error is material to the decision of the instant case.

We reaffirm those parts of *Vaughn I* which we described as follows (*Vaughn I*, 81 T.C. at 913):

> We conclude that the form of the three transfers to Steven reflect the substance of the transactions, and that these transfers constituted bona fide sales to Steven. We also conclude that Steven (and not Charles as respondent contends) received the liquidating distribution from Perry. However, we must still consider what effect the escrow agreement has on these transactions.

However, we now conclude that we erred in our *Vaughn I* analysis of "what effect the escrow agreement has on these transactions."

Although the escrow agreement is an integral part of contract III and we conclude that Charles could have enforced it, the fact remains that the agreement was never carried out. We have found that "Steven did not place the proceeds attributable to the sale of the property received as a liquidating distribution from Perry in escrow as provided for in contract III" (*Vaughn I*, 81 T.C. at 905). Steven still had the proceeds (except, of course, to the extent that he may have used some parts of the proceeds to make his installment sale payments to Charles and Dorothy), he invested these proceeds, and he earned significant amounts from these investments. *Vaughn I*, 81 T.C. at 905. We may assume that the proceeds, or the assets in which they were invested, would have been available to Steven's general creditors.

In those cases where an escrow account has led to a holding that the seller is to be treated as having constructively received the escrowed amounts, the buyer has in fact parted with the escrowed amounts. See, e.g., the cases cited in *Vaughn I*, 81 T.C. at 913. In the instant case, Steven did

not part with any such amounts; Charles merely had a contractual right to require him to do so.

We conclude that Charles did not constructively receive any of the proceeds of Steven's sale.[2]

We hold for petitioners on this issue. Since the instant case is not an escrow case, it is not appropriate in this opinion to consider the position of this Court with regard to *Reed v. Commissioner*, 723 F.2d 138 (CA1 1983), revg. T.C. Memo. 1982-734.

To take account of the parties' concessions,

*An appropriate order will be entered granting petitioners' motion; decision will be entered under Rule 155.*

_____

[2]It is clear that the part of our opinion in *Vaughn I*, 81 T.C. 893 (1983), that begins with the second full paragraph on page 913, and continues through the first full paragraph ending on page 917, no longer plays a part in our analysis. If we were silent with regard to this material, then some might argue that this material remains as dictum, or at least is a clue as to what we would have held if Steven had placed the funds into escrow; others might say that our analysis in the instant opinion amounts to a rejection of this material. So that unwarranted inferences are not drawn from the two opinions in the instant case, we state that this material in 81 T.C. at 913-917 is to be disregarded. See, e.g., *Zuanich v. Commissioner*, 77 T.C. 428, 457 (1981). See also the Congress' action in a somewhat similar situation, sec.1307(a)(3), Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1722; H. Rept. 94-1210 (to accompany H.R. 13500), 16-17 (1976), 1976-3 C.B. (Vol. 3) 46-47; S. Rept. 94-938 (Part 2), 84 (1976), 1976-3 C.B. (Vol. 3) 726; S. Rept. 94-1236 (H. Rept. 94-1515 (Conf.), 532-534 (1976), 1976-3 C.B. (Vol. 3) 936-938; Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 415-416 (J. Comm. Print 1976).