T.C. Memo. 1999-32


UNITED STATES TAX COURT


DAVID L. WIKSELL AND MARGARET ANN CARPENDER, Petitioners
     <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 11752-91.                    Filed February 2, 1999.


        P filed a Motion for Reconsideration of our opinion in
<u>Wiksell v. Commissioner</u>, T.C. Memo. 1998-3, arguing that
sec. 6015(c)(3)(C), I.R.C., enacted by sec. 3201(a),
Internal Revenue Service Restructuring and Reform Act of
1998, Pub. L. 105-206, 112 Stat. 734, requires us to
consider: (1) Whether P had "actual knowledge" of certain
checks which gave rise to the deficiency, and (2) if so,
whether P signed her 1984 and 1985 joint tax returns under
duress. <u>Held</u>:  Our opinion in <u>Wiksell v. Commissioner</u>, T.C.
Memo. 1998-3, has adequately addressed whether P had "actual
knowledge" with respect to income, not reported on P's joint
return, derived from the receipt of checks from her
husband's company. <u>Held</u>, <u>further</u>, the issue of duress has
previously been considered and rejected. <u>Wiksell v.
Commissioner</u>, 90 F.3d 1459, 1462 (9th Cir. 1996), revg. and
remanding T.C. Memo. 1994-99, on remand T.C. Memo. 1998-3.
<u>Held</u>, <u>further</u>, P's Motion for Reconsideration is denied.

————————————————————

        *This opinion supplements our opinions in <u>Wiksell v.
Commissioner</u>, T.C. Memo. 1994-99, revd. and remanded 90 F.3d 1459
(9th Cir. 1996), and <u>Wiksell v. Commissioner</u>, T.C. Memo. 1998-3.

Bruce I. Hochman and Michel R. Stein, for petitioner Margaret Ann Carpender.

Steven M. Roth, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

NIMS, Judge:  Margaret Ann Carpender (petitioner) moves the Court for reconsideration of its memorandum opinion at T.C. Memo. 1998-3.  See Rule 161.  Unless otherwise stated, section references are to sections of the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

In Wiksell v. Commissioner, T.C. Memo. 1998-3, we reevaluated our prior decision in Wiksell v. Commissioner, T.C. Memo. 1994-99, as directed by the Ninth Circuit on remand in Wiksell v. Commissioner, 90 F.3d 1459 (9th Cir. 1996).  We held that petitioner was entitled to innocent spouse relief under section 6013(e) for deficiencies in excess of the amounts relating to checks she received from her husband's company, Hitech, and that it would not be inequitable to hold petitioner liable for deficiencies related to the Hitech checks.  Wiksell v. Commissioner, T.C. Memo. 1998-3.

In her motion to reconsider our decision in Wiksell v. Commissioner, T.C. Memo. 1998-3, petitioner argues that section 6015(c)(3)(C), enacted by section 3201(a) of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L.

105-206, 112 Stat. 734, requires us to reconsider: (1) Whether petitioner had "actual knowledge" of the Hitech checks which gave rise to the deficiency, and (2) if so, whether petitioner signed her 1984 and 1985 joint tax returns under duress.

Respondent argues that (1) our prior opinions have already addressed the question and found that petitioner had actual knowledge of the Hitech checks, and (2) our prior opinions and the opinion of the Court of Appeals for the Ninth Circuit have addressed the question and found that petitioner did not show duress.

For the reasons stated below, we agree with respondent.

## Background

We adopt the findings of fact in our prior memorandum opinions, Wiksell v. Commissioner, T.C. Memo. 1994-99, and Wiksell v. Commissioner, T.C. Memo. 1998-3, as modified in the latter.  For convenience, we repeat the facts necessary to elucidate the ensuing discussion.

David L. Wiksell (David) and petitioner were married in 1960, legally separated in 1988, and divorced in December 1992. Petitioner, formerly Margaret Ann Wiksell, is now known as Margaret Ann Carpender.  During the years in issue, and throughout most of her marriage, petitioner maintained her own separate checking accounts.

Sometime in 1982 or 1983, David started Hitech Recovery Systems, Inc. (Hitech).  David told petitioner that Hitech was to engage in the extraction of oil from old oil wells.

Sometime before the spring of 1984, David began working as a real estate investment adviser for Comstock Financial Services, Inc. (Comstock Financial), an insurance agency owned and operated by Roy L. Comstock (Comstock). During the spring of 1984, David told petitioner that Comstock was investing in Hitech.

During 1984 and 1985, David maintained a business checking account under the name Hitech. Petitioner was not a signatory on this account. David periodically gave petitioner checks drawn on the Hitech account and made payable to "Margaret Wiksell", which she deposited into her two personal checking accounts. In 1984, petitioner was given 23 checks from Hitech totaling $54,500. In 1985, petitioner received 15 Hitech checks totaling $140,500 from Hitech.

In 1984 and 1985, petitioner wrote checks on her accounts totaling $78,781.38 and $149,444.32, respectively. Among other things, these checks were used for clothes; loans to a child; charitable and political contributions; entertainment and gifts; home furnishings; home repair and maintenance; credit card payments; mortgage payments; and numerous other miscellaneous expenses.

In January or February 1987, David was arrested and charged with fraud in connection with a scam perpetrated by Roy Comstock, Abraham Boldt, and David, wherein it was alleged that at least $2 million, fraudulently obtained from unsuspecting investors in Comstock Financial, was diverted to Hitech. On January 13, 1988,

David pleaded guilty to various counts of fraud involving the sale of unregistered securities in connection with his participation in the fraudulent investment scheme.

On their 1984 and 1985 returns, David and petitioner reported adjusted gross income of $10,525 and $4,298, respectively, of which approximately $9,801 in 1984 and $1,760 in 1985 represented petitioner's wages from part-time nursing. Petitioner signed the 1984 return on June 16, 1987, and the 1985 return on November 9, 1987.

At the time she signed the 1984 and 1985 returns, petitioner questioned David about why the returns contained no income reflecting the money that he had given her in those years. She stated that he gave her

> such a bizarre explanation that I don't think I could even repeat it, I mean what he told me. * * * It was something along the fact that it had been investment--that he had investments in * * * [Hitech] that had been lost and this was return, or something along those lines. * * * it just didn't make sense to me.

Petitioner suspected that David was lying, but she would not press him further on the matter. David had gotten violent when Margaret or others "probed" into his finances.

### Discussion

Reconsideration under Rule 161 serves the limited purpose of correcting manifest errors of fact or law, also allowing for the introduction of newly discovered evidence that could not have been introduced before the filing of an opinion, even if the moving party had exercised due diligence. See Estate of

Trenchard v. Commissioner, T.C. Memo. 1995-232; see Traum v. Commissioner, 237 F.2d 277, 281 (7th Cir. 1956), affg. T.C. Memo. 1955-127.  The granting of a motion for reconsideration rests within the discretion of the Court, and we usually do not exercise our discretion to grant such a motion absent a showing of unusual circumstances or substantial error.  Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986); CWT Farms, Inc. v. Commissioner, 79 T.C. 1054, 1057 (1982), affd. 755 F.2d 790 (11th Cir. 1985); Haft Trust v. Commissioner, 62 T.C. 145, 147 (1974), affd. on this issue, vacated and remanded 510 F.2d 43, 45 n.1 (1st Cir. 1975).

Reconsideration is not the appropriate forum for rehashing previously rejected arguments or tendering new legal theories to reach the end desired by the moving party.  Estate of Trenchard v. Commissioner, supra.  The Court tries all issues raised in a case in one proceeding to promote orderly litigation and to further judicial economy by discouraging piecemeal and protracted litigation.  Vaughn v. Commissioner, supra at 166-167; CWT Farms, Inc. v. Commissioner, supra at 1057; Stoody v. Commissioner, 67 T.C. 643 (1977); Haft Trust v. Commissioner, supra at 147.

However, the RRA 1998 was enacted on July 22, 1998, after the previous opinions in this case.  Section 3201(g)(1) of the RRA 1998, 112 Stat. 740, provides that section 6015 applies to any tax liability arising after July 22, 1998, and any tax liability arising on or before July 22, 1998, and remaining unpaid as of that date.  Section 3201(g)(2) of the RRA 1998

provides that the 2-year period for electing innocent spouse relief or separate liability will not expire before the date which is 2 years after the date of the first collection activity after July 22, 1998.  The parties appear implicitly to assume that the relief provisions of section 6015 could be retroactively available in this case.  Since we deem this to be a showing of "unusual circumstances", we entertain petitioner's Motion for Reconsideration for that reason.

Section 6015(c)(1) allows a taxpayer who files a joint return to elect to limit such individual's liability for any deficiency with respect to such joint return if the requirements of section 6015(c)(3)(A) are met.  Section 6015(c)(3)(A) provides:

> (i)  In General.--An individual shall only be eligible to elect the application of this subsection if--
>
> (I)  at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates * * *

Respondent concedes, and we agree, that petitioner meets this requirement.

Section 6015(c)(3)(C) provides that

> If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress. [Emphasis added.]

Actual Knowledge

Petitioner asserts that we should consider whether for purposes of section 6015(c), she had actual knowledge of the Hitech checks at the time she signed the 1984 and 1985 returns. Petitioner points out that the standard of "actual knowledge" under section 6015(c)(3)(C) is a narrower standard than that of "known or should have known" under section 6013(e). The conference committee report states that "actual knowledge must be established by the evidence and shall not be inferred based on indications that the electing spouse had a reason to know." H. Conf. Rept. 105-599, at 253 (1998). Furthermore, section 6015(c)(3)(C) places the burden to establish actual knowledge on respondent.

Petitioner acknowledges that we found that she "was, however, precisely aware of the amounts derived from Hitech via David that actually passed through her hands." Wiksell v. Commissioner, T.C. Memo. 1998-3. However, petitioner argues that we relied upon the same factors to find that petitioner had "reason to know" of the Hitech checks in Wiksell v. Commissioner, T.C. Memo. 1994-99, as we did to conclude that petitioner was "precisely aware" of the Hitech checks in Wiksell v. Commissioner, T.C. Memo. 1998-3. Therefore, petitioner concludes, "precisely aware" must mean something other than actual knowledge as contemplated by Congress, and reconsideration is appropriate.

In Wiksell v. Commissioner, T.C. Memo. 1994-99, we stated

that

     We do not believe it necessary to repeat all of our
findings  of fact to demonstrate our reasons for concluding
that * * * [petitioner] not only had reason to know, but
actually  had knowledge, that the returns contained
substantial understatements.  * * * [Petitioner's] actual
knowledge is established by the simple fact that * * *
[petitioner] admitted that she asked David why there was no
income on the returns reflecting the money that had been
coming to her through him from Hitech, and which the family
had been living on during the years in issue.  * * *

We subsequently stated:

     [Petitioner] also had reason to know of the
substantial understatements.  She was well aware of David's
involvement in Hitech, and during 1984 she received 23
Hitech checks from David totaling $54,500, which she
deposited into her separate checking accounts.  During 1985,
she received 15 Hitech checks from David totaling $140,500
which she deposited into her separate checking accounts.
Throughout these years * * * [petitioner] wrote large checks
on her individual account to charities, political
candidates, and for home improvements.  She had to know that
her own meager earnings from nursing were vastly
insufficient to provide these funds.  [Id.]

     In Wiksell v. Commissioner, T.C. Memo. 1998-3, we stated:

     Petitioner was, however, precisely aware of the amounts
derived from Hitech via David that actually passed through
her hands.  As we have found, in 1984, petitioner was given
23 checks from Hitech, totaling $54,500.  In 1985,
petitioner received 15 Hitech checks totaling $140,500.
During these same years petitioner spent substantial amounts
for clothing for herself and her children, loans to a child,
charitable and political contributions, entertainment and
gifts, home furnishings, home repair and maintenance, credit
card payments, mortgage payments, and numerous other
miscellaneous expenses.

     In essence, petitioner argues that because we used similar

facts to derive two different conclusions (i.e., "had reason to

know" versus "precisely aware"), it follows that these facts

could not have justified both conclusions.  According to

petitioner's reasoning, since we have already concluded that these facts are indications of "reason to know", they cannot form the basis for "actual knowledge" under section 6015(c). This argument facilely ignores the obvious fact that the "actual knowledge" concept subsumes the concept of "reason to know"; i.e., if a person has actual knowledge of a fact, she also has reason to know of it (the converse, of course, not necessarily being true).

Petitioner's argument is illogical, and we find it unpersuasive. Our opinion in Wiksell v. Commissioner, T.C. Memo. 1998-3, does not indicate that we inferred petitioner's actual knowledge "based on indications that the electing spouse had a reason to know." H. Conf. Rept. 105-599, supra at 253. We think in this particular case that the same facts used to determine that petitioner "had reason to know" also amply establish that petitioner had "actual knowledge" or a "precise awareness".

Petitioner further argues that section 6015(c) has changed the culpability standard from objective under section 6013(e) to subjective. Under section 6013(e)(1)(C), a taxpayer spouse must establish "that in signing the return he or she did not know, and had no reason to know, that there was * * * [a] substantial understatement". Petitioner points out that findings of objectivity dominate the record. As such, petitioner concludes, our findings and holdings are consistent with the objective standard, and accordingly, reconsideration is warranted.

We dismiss petitioner's argument because it ignores the language of our finding that petitioner was "precisely aware" of the Hitech checks she received from David.  Our finding was based on petitioner's subjective awareness of the Hitech check deposits and her subjective awareness that she wrote checks in amounts far in excess of the modest income she earned as a part-time nurse in 1984 and 1985.

Based on the foregoing, we hold that our opinion in Wiksell v. Commissioner, T.C. Memo. 1998-3, has adequately addressed whether petitioner had actual knowledge with respect to the Hitech checks she received from David.

Duress

Petitioner argues that neither the Tax Court nor the U.S. Court of Appeals for the Ninth Circuit could possibly have considered the significance of the term "duress" as contemplated by legislative mandate, as that concept had just been newly codified in section 6015.  Section 6015(c)(3)(C) provides in pertinent part: "This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress."

Neither the statute nor the legislative history indicate that Congress intended to define the term "duress".  See sec. 6015(c)(3)(C); H. Conf. Rept. 105-599, supra at 251-255.  The U.S. Court of Appeals for the Ninth Circuit directly addressed the question of whether petitioner signed the returns in question under duress and concluded that she did not.  Wiksell v.

<u>Commissioner</u>, 90 F.3d at 1462.  Petitioner may not again rehash her previously rejected arguments regarding duress.  See <u>Estate of Trenchard v. Commissioner</u>, T.C. Memo. 1995-232.

Petitioner has failed to identify a persuasive reason to grant her Motion for Reconsideration.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued denying the</u>

<u>Motion for Reconsideration</u>.