T.C. Memo. 2006-124

UNITED STATES TAX COURT

ANSCHUTZ COMPANY AND SUBSIDIARIES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 6169-03.                    Filed June 14, 2006.

<u>Herbert N. Beller</u>, <u>John W. Bonds Jr.</u>, <u>Andrew B. Clubok</u>,
<u>Thomas L. Evans</u>, <u>Mark B. Hamilton</u>, <u>Tony Y. Lam</u>, and <u>Todd F.
Maynes</u>, for petitioners.

<u>Virginia L. Hamilton</u> and <u>Michael C. Prindible</u>, for
respondent.

---

[*] This Supplemental Memorandum Opinion supplements our
prior opinion in <u>Anschutz Co. & Subs. v. Commissioner</u>, T.C. Memo.
2006-40.

SUPPLEMENTAL MEMORANDUM OPINION

HAINES, <u>Judge</u>:  On April 12, 2006, pursuant to Rule 161, respondent filed a motion for reconsideration of this Court's Memorandum Findings of Fact and Opinion in <u>Anschutz Co. & Subs. v. Commissioner</u>, T.C. Memo. 2006-40 (Anschutz I).[1]

In his motion, respondent alleges that this Court erred "by failing to address whether Qwest's Common Indirect Costs directly benefited its section 263A retained assets, and * * * by not requiring those costs be allocated to Qwest's section 263A retained assets."  This Supplemental Memorandum Opinion addresses respondent's allegations of error.

Background

We adopt the findings of fact in our prior Memorandum Findings of Fact and Opinion, Anschutz I.  For convenience and clarity, we repeat below the facts necessary for the disposition of this motion.

During the years in issue, Qwest entered into contracts to install conduit (conduit installation projects) and to pull fiberoptic cable (IRU projects) for third-party customers.[2]

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  The years in issue were July 31, 1994 through 1996. Before and during the years in issue, Qwest was known by different names, but for convenience, it will be referred to only
(continued...)

These contracts were long-term contracts as defined by section 460. After Qwest contracted with the third-party customers, it decided to install for its own potential future use or sale additional conduit or fiberoptic cable along the same route as the customers' conduit or cable.[3]

Because Qwest was engaged in the simultaneous installation and sale of conduit or fiber to third-party customers and the installation and retention of additional conduits or fibers for its own potential future sale or use, Qwest allocated total project costs between third-party contracts and the retained assets using an incremental cost allocation method. Qwest's incremental cost allocation method is described as follows: (1) Qwest allocated to the customer contracts what it determined to be direct costs associated with those contracts; (2) Qwest allocated to its retained assets what it determined to be the direct costs associated with its retained conduits and fibers; and (3) Qwest allocated what it determined to be indirect costs

---

[2](...continued)
as "Qwest". At the beginning of the years in issue, petitioners owned 75 percent of Qwest and, by August 1995, owned 100 percent. For a description of the conduit installation projects and the IRU projects, see Anschutz I.

[3] Qwest also engaged in other projects which were not at issue. For a description of all projects during the years in issue, see Anschutz I.

incrementally between the customer contracts and its retained assets.[4]

On February 4, 2003, respondent mailed a notice of deficiency to petitioners for the years in issue. Respondent determined that Qwest's incremental cost allocation did not clearly reflect income and that an average cost allocation approach should be used for all of Qwest's conduit installation and IRU projects. Petitioners' petition to this Court followed on April 24, 2003.

In Anschutz I, respondent contended that Qwest's incremental cost allocation method was not a reasonable allocation method under section 1.263A-1(f)(4), Income Tax Regs. Further, respondent asserted that Qwest's incremental cost allocation method failed to clearly reflect income, and thus respondent could change it to an average cost allocation method. We found that Qwest's incremental cost allocation method was a reasonable allocation method under sections 1.263A-1(e)(3)(i) and 1.451-3(d)(6)(ii), Income Tax Regs., and that respondent abused his discretion in determining that Qwest's incremental cost allocation method failed to clearly reflect income.

---

[4] The incremental cost allocation method was used for both the conduit installation projects and the IRU projects, but the method varied slightly. For a detailed description of Qwest's incremental cost allocation method, see Anschutz I.

## Discussion

Reconsideration under Rule 161 is intended to correct substantial errors of fact or law and allow the introduction of newly discovered evidence that the moving party could not have introduced, by the exercise of due diligence, in the prior proceeding. Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998). This Court has discretion whether to grant a motion for reconsideration and will not do so unless the moving party shows unusual circumstances or substantial error. Id.; see also Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986). "Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or tendering new legal theories to reach the end result desired by the moving party." Estate of Quick v. Commissioner, supra at 441-442.

In his motion for reconsideration, respondent alleges that "the Court failed to analyze the application of the 'directly benefits' test, as required by the section 263A regulations." Respondent further argues:

> Section 1.263A-1(e)(3)(i) implements the section 263A requirement that a taxpayer must allocate the costs of producing an asset to that asset. Section 1.263A-1(e)(3)(i) of the regulations provides: "Indirect costs are properly allocable to property produced or property acquired for resale *when the costs directly benefit <u>or</u> are incurred by reason of* the performance of production or resale activities." (Emphasis added.) The test in section 1.263A-1(e)(3)(i) is disjunctive: Qwest must allocate Common Indirect Costs to its section 263A retained assets if those costs meet either prong of the test. The Court's opinion is based on the

> "incurred by reason of" prong.  The Court did not address the "directly benefits" prong as required by the regulatory test.  Qwest's Common Indirect Costs plainly meet the "directly benefits" prong and should have been allocated to Qwest's section 263A retained assets.

Before the motion, respondent never argued that the section 263A regulations provided for a "direct benefits" test.[5]  Respondent's motion for reconsideration is not the appropriate forum to raise a new legal theory and can be denied on that basis alone.  See id.  Nevertheless, to explain why we conclude that respondent misconstrues the regulations under section 263A and ignores the regulations under section 460, we shall address respondent's new theory.

At issue in Anschutz I was Qwest's allocation of indirect costs, incurred when installing conduit or when pulling fiber, between its retained assets and its long-term customer contracts. Section 263A governed the cost allocations to its retained assets, while section 460 governed the cost allocations to its long-term customer contracts.[6]  We found that the regulations under each section provided for two levels of allocation of indirect costs, and only the first-level allocations were at

---

[5]  In his answering brief, respondent analyzed Qwest's incremental cost allocation method under both the clear reflection of income standard and under the "reasonable allocation" test.  The Court addressed both in Anschutz I.

[6]  See Anschutz I for a detailed description of each Internal Revenue Code section.

issue.[7]  See secs. 1.263A-1(e)(3)(i), (f)(4), (g)(3), 1.451-3(d)(6)(ii), (8)(iv), Income Tax Regs.[8]

The first-level allocations are governed by sections 1.263A-1(e)(3)(i) and 1.451-3(d)(6)(ii), Income Tax Regs.  In his motion, respondent focuses only on one sentence of section 1.263A-1(e)(3)(i), Income Tax Regs.:  "Indirect costs are properly allocable to property produced or property acquired for resale when the costs directly benefit or are incurred by reason of the performance of production or resale activities."  Respondent's interpretation of this sentence, resulting in the creation of a "directly benefits" test and an "incurred by reason of" test, would render meaningless the remainder of section 1.263A-1(e)(3)(i), Income Tax Regs., and would create an unjustifiable contradiction between sections 1.263A-1(e)(3)(i) and 1.451-3(d)(6)(ii), Income Tax Regs.

If we were to apply the "directly benefits" test advocated by respondent, _all_ indirect costs that directly benefit taxpayer-

_____

[7]  The regulations under secs. 460 and 263A do not use the terminology "first level" and "second level" allocations. However, the effect of those regulations is to break the allocations into two distinct steps.  For purposes of clarity, we refer to these steps as "first level" and "second level".

[8]  Sec. 460(c)(1) provides that costs are allocated to long-term contracts in the same manner as costs are allocated to extended period long-term contracts under sec. 451 and the accompanying regulations.  Sec. 451 directs us to the regulations at sec. 1.451-3(d)(6), Income Tax Regs., to allocate costs to long-term contracts.

produced property would <u>have to be</u> allocated to that property. However, section 1.263A-1(e)(3)(i), Income Tax Regs., provides that "Indirect costs may be allocable to both production and resale activities, as well as to other activities that are not subject to section 263A." The section then requires that indirect costs be reasonably allocated between taxpayer-produced property and the taxpayer's other activities. If <u>all</u> indirect costs that directly benefit the taxpayer-produced property were allocated to that property, as respondent suggests, common indirect costs that also benefit the taxpayer's other activities could not be reasonably allocated to those activities, as contemplated by the remainder of the section.

Similar to section 1.263A-1(e)(3)(i), Income Tax Regs., section 1.451-3(d)(6)(ii), Income Tax Regs., provides that costs which directly benefit the performance of long-term contracts must be allocated to those contracts. If we interpreted section 1.451-3(d)(6)(ii), Income Tax Regs., in the same manner respondent interprets section 1.263A-1(e)(3)(i), Income Tax Regs., the two sections would contradict each other when a taxpayer like petitioner must allocate common indirect costs that directly benefit both taxpayer-produced property and long-term contracts. Section 1.263A-1(e)(3)(i), Income Tax Regs., would require that the taxpayer allocate 100 percent of the common indirect costs that directly benefit both the taxpayer-produced

property and the long-term contracts to only the taxpayer-produced property. At the same time, section 1.451-3(d)(6)(ii), Income Tax Regs., would require that the taxpayer allocate 100 percent of those same common indirect costs to only the long-term contracts. The requirement of one section could not be reconciled with the requirement of the other without some mechanism to allocate the common indirect costs between the taxpayer-produced property and the long-term contracts. Respondent's "directly benefits" test would leave the taxpayer without such a mechanism.

The proper rule for first-level allocations of common indirect costs between taxpayer-produced property and long-term contracts is arrived at by looking at sections 1.263A-1(e)(3)(i) and 1.451-3(d)(6)(ii), Income Tax Regs., in their entirety. The sections are similar in structure and, as found in Anschutz I, provide an identical rule for first-level allocations.

Section 1.263A-1(e)(3)(i), Income Tax Regs., provides that "Indirect costs are properly allocable to property produced or property acquired for resale when the costs directly benefit or are incurred by reason of the performance of production or resale activities." Similarly, section 1.451-3(d)(6)(ii), Income Tax Regs., provides that "In determining what indirect costs are properly allocable to * * * [a] long-term contract, all such costs that directly benefit * * * or are incurred by reason of

the performance of * * * long-term contracts, must be allocated to * * * long-term contracts". These sentences, in isolation, do not provide a rule for how indirect costs that directly benefit or are incurred by reason of <u>both</u> taxpayer-produced property <u>and</u> long-term contracts should be allocated between the property and the contracts. To allocate indirect costs between taxpayer-produced property and long-term contracts when the same costs benefit both the property and the contracts, the remainder of the sections must be considered.

Each section goes on to recognize that some indirect costs may be allocable to activities subject to that section (either taxpayer-produced property or long-term contracts) and to the taxpayer's other activities. In pertinent part, section 1.263A-1(e)(3)(i), Income Tax Regs., provides:

> Indirect costs may be allocable to both production and resale activities, as well as to other activities that are not subject to section 263A. Taxpayers subject to section 263A <u>must make a reasonable allocation of indirect costs between production, resale, and other activities</u>. [Emphasis added.]

Similarly, section 1.451-3(d)(6)(ii), Income Tax Regs., provides:

> Certain types of costs may directly benefit, or be incurred by reason of the performance of * * * long-term contracts of the taxpayer even though the same type of costs also benefits other activities of the taxpayer. Accordingly, <u>such costs require a reasonable allocation between the portion of such costs that are attributable to * * * long-term contracts and the portion attributable to the other activities of the taxpayer</u>. [Emphasis added.]

Section 1.263A-1(e)(3)(i), Income Tax Regs., does not provide for a "directly benefits" test or an "incurred by reason of" test, of the kind suggested by respondent. Instead, as found in Anschutz I and as indicated by the above-emphasized language, sections 1.263A-1(e)(3)(i) and 1.451-3(d)(6)(ii), Income Tax Regs., provide a "reasonable allocation" test for a taxpayer's allocation of indirect costs among taxpayer-produced property, long-term contracts, and other activities. The "reasonable allocation" test was the focus of the Court's analysis in Anschutz I. Using the appropriate test, we found that Qwest's incremental cost allocation method was a reasonable cost allocation method under sections 1.263A-1(e)(3)(i) and 1.451-3(d)(6)(ii), Income Tax Regs. For these reasons, respondent's allegation that the Court improperly focused on the "incurred by reason of" test while ignoring the "directly benefits" test is without support.

Respondent has failed to demonstrate unusual circumstances or substantial errors of fact or law. Respondent seeks only to assert a new legal theory, which we find unpersuasive. Accordingly, we will deny respondent's motion for reconsideration.

We have considered all arguments and contentions made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.