T.C. Memo. 2013-154

UNITED STATES TAX COURT

B.V. BELK, JR., AND HARRIET C. BELK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5437-10.                    Filed June 19, 2013.

David M. Wooldridge, Ronald A. Levitt, and Gregory P. Rhodes, for

petitioners.

Scott L. Little, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION[*]

VASQUEZ, Judge: On February 27, 2013, pursuant to Rule 161, petitioners

timely filed a motion for reconsideration of this Court's Opinion in Belk v.

_____

[*] This opinion supplements our prior Opinion, Belk v. Commissioner, 140
T.C. ___ (Jan. 28, 2013).

**[*2]** <u>Commissioner</u>, 140 T.C. ___ (Jan. 28, 2013) (<u>Belk I</u>).  In <u>Belk I</u> we held that petitioners were not entitled to a deduction for a qualified conservation contribution because they failed to donate a qualified real property interest.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

We adopt the findings of facts in our prior Opinion, <u>Belk I</u>.  For convenience and clarity, we repeat below the facts necessary for the disposition of this motion.

In the mid-1990s petitioners owned approximately 410 acres of land in North Carolina through Olde Sycamore, LLC (Olde Sycamore).[1]  On that property Olde Sycamore developed a residential community and built Olde Sycamore Golf Plantation (golf course).  The golf course is an 18-hole golf course on 184.627 acres of land.

In December 2004 Olde Sycamore executed the conservation easement agreement at issue with Smokey Mountain National Land Trust (SMNLT).  The

---

[1]  During the years at issue B.V. Belk, Jr., owned 99% of Olde Sycamore and Harriet Belk owned 1%.

**[*3]** conservation easement covers the 184.627 acres of land on which the golf

course is located.  Except for the rights reserved, the conservation easement

agreement prohibits the golf course from being used for residential, commercial,

institutional, industrial, or agricultural purposes.  The conservation easement

agreement permits petitioners and SMNLT to change what property is subject to

the conservation easement.  Specifically, Article III:  Reserved Rights of the

conservation easement agreement states the following:

> 3.  Owner may substitute an area of land owned by Owner which is contiguous to the Conservation Area for an equal or lesser area of land comprising a portion of the Conservation Area, provided that:
>
> > a.  In the opinion of Trust:
> >
> > > (1) the substitute property is of the same or better ecological stability as that found in the portion of the Conservation Area to be substituted;
> > >
> > > (2) the substitution shall have no adverse affect on the conservation purposes of the Conservation Easement or on any of the significant environmental features of the Conservation Area described in the Baseline documentation;
> > >
> > > (3) the portion of the Conservation Area to be substituted is selected, constructed and managed so as to have no adverse impact on the Conservation Area as a whole;
> > >
> > > (4) the fair market value of Trust's conservation easement interest in the substituted property, when

[*4] subject to this Conservation Easement, is at least equal to or greater than the fair market value of the Conservation Easement portion of the Conservation Area to be substituted; and

(5) Owner has submitted to Trust sufficient documentation describing the proposed substitution and how such substitution meets the criteria set forth in subsections (1)-(4) above of this Section B.3.a. of this Article III.

b. Trust shall render an opinion upon a proposed substitution request of the Owner within sixty (60) days of receipt of notice. A favorable opinion of Trust shall not be unreasonably withheld. However, should Trust render an unfavorable opinion, Trust shall provide a written explanation to Owner as to the reasoning and facts used in reaching such opinion within ten (10) days of the decision. In addition, Trust will undertake a reasonable good faith effort to help Owner identify property for such trade in which Trust believes will meet the above requirements but also accomplish the Owner's objectives.

c. No such substitution shall be final or binding upon Trust until made a subject of an amendment[2] to this

---

[2] Article VIII: Miscellaneous of the conservation easement agreement states the following with respect to amendment:

Owner and Trust recognize that circumstances could arise which would justify the modification of certain of the restrictions contained in this Conservation Easement. To this end, Trust and the legal owner or owners of the Conservation Area at the time of amendment shall mutually have the right, in their sole discretion, to agree to amendments to this Conservation Easement which are not inconsistent with the Conservation Values or the purposes of this

(continued...)

**[*5]** Conservation Easement acceptable to and executed by Owner and Trust and recorded in the Register of Deeds Office of Mecklenburg County and/or Union County. The amendment shall include, among other things, a revised Conservation Easement Plan or portion thereof showing the portions of the Conservation Area that are to be removed from the coverage of this Conservation Easement and the equal or greater area of contiguous land of the Owner to be made part of the Conservation Area, and thus, subject to the Conservation Easement.

Petitioners claimed a $10,524,000 charitable contribution deduction on their Schedule A, Itemized Deductions, for 2004.[3] Petitioners deducted $2,291,708 in 2004 and carried forward the remainder to 2005 and 2006.

## Discussion

Reconsideration under Rule 161 is intended to correct substantial errors of fact or law and allow the introduction of newly discovered evidence that the moving party could not have introduced, by the exercise of due diligence, in the prior proceeding. Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998).

---

[2](...continued)
instrument; provided, however, that Trust shall have no right or power to agree to any amendments hereto that would result in this Conservation Easement failing to qualify as a valid conservation agreement under the "Act," as the same may be hereafter amended, or as a qualified conservation contribution under Section 170(h) of the Internal Revenue Code and applicable regulations.

[3] Olde Sycamore's charitable contribution passed through to petitioners under sec. 702(a)(4).

**[*6]** This Court has discretion to grant a motion for reconsideration and will not do so unless the moving party shows unusual circumstances or substantial error. Id.; see also Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986). "Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or tendering new legal theories to reach the end result desired by the moving party." Estate of Quick v. Commissioner, 110 T.C. at 441-442.

Taxpayers may deduct the values of any charitable contributions made during the tax year pursuant to section 170(a)(1). Generally, taxpayers are not entitled to deduct gifts of property that consist of less than the taxpayers' entire interest in that property. Sec. 170(f)(3). However, taxpayers are permitted to deduct the value of a contribution of a partial interest in property that constitutes a "qualified conservation contribution" as defined in section 170(h)(1). To be a qualified conservation contribution, a contribution must be of a "qualified real property interest". Sec. 170(h)(1)(A). As relevant here, section 170(h)(2)(C) defines a qualified real property interest as a "restriction (granted in perpetuity) on the use which may be made of the real property."

In Belk I we found that the conservation easement agreement permits petitioners and SMNLT, by agreement and subject to certain restrictions, to change what real property is subject to the conservation easement. Thus, we

**[*7]** concluded that petitioners failed to donate an interest in real property that is subject to a use restriction granted in perpetuity.

Petitioners move for reconsideration on three grounds: (1) the Court misinterpreted section 170(h)(2)(C); (2) the Court misconstrued North Carolina law in determining that a substitution could occur under the conservation easement; and (3) the Court has imposed an inapplicable and impossible standard for obtaining a deduction under section 170(h).

First Ground

Petitioners maintain that the Court misinterpreted section 170(h)(2)(C) and, thereby, imposed on petitioners a requirement not found in the Code or regulations. Petitioners assert that section 170(h)(2)(C) does not require the donation of an interest in "an identifiable, unchanging, static piece of real property." Petitioners argue that we focused too much on "the real property" and ignored the fact that petitioners donated a use restriction granted in perpetuity. According to petitioners, as long as they agree not to develop 184.627 acres of land, the Court (and the Internal Revenue Service (IRS)) should not be concerned with what land actually comprises those 184.627 acres. We have already rejected the notion of such "floating easements" in Belk I and found that section

**[*8]** 170(h)(2)(C) requires that taxpayers donate an interest in an identifiable, specific piece of real property.

A deduction for a conservation easement is an exception to the general rule that prohibits deductions for the donation of partial interests in property. See sec. 170(f)(3)(B)(iii). When a taxpayer donates a partial interest, he retains the remaining interest in the property. Thus, the taxpayer is effectively splitting the property into two pieces: (1) the retained portion and (2) the donated portion. Petitioners' interpretation of the statute would allow the donated portion (i.e., the easement) to encumber any piece of property; it could be the retained portion or another piece of property that the taxpayer owns. This is inconsistent with the taxpayer taking a charitable deduction for giving up part of his or her property (i.e., a partial interest). If the donated portion does not restrict the use of the retained portion, then the taxpayer has retained 100% of the economic value of the property for which he or she is taking a deduction. The fact that the donated property might encumber and thus reduce the value of some unrelated property is irrelevant.

Petitioners further assert that Belk I will have "far reaching implications" because it prohibits modifications to the real property subject to a conservation easement. Petitioners argue that Belk I directly conflicts with IRS guidance in

**[*9]** Priv. Ltr. Rul. 200403044 (Jan. 16, 2004) and Priv. Ltr. Rul. 9603018 (Jan. 19, 1996).[4]  In both private letter rulings, the taxpayers reserved the limited right to construct additional buildings on the real property that was subject to the conservation easements.  The IRS found that the taxpayers had made qualified conservation contributions even though the conservation easement agreements permitted limited modifications to the real property subject to the conservation easements.  The IRS noted that the donees either had to approve the modifications or had adequate means to protect the conservation purpose of the conservation easement.  Belk I is not in conflict with these private letter rulings.  Belk I does not speak to the ability of parties to modify the real property subject to the conservation easement; it simply requires that there be a specific piece of real property subject to the use restriction granted in perpetuity.

Petitioners argue that we have denied taxpayers and land trusts the flexibility needed in order to accomplish the purpose and intent of section 170(h). As we acknowledged in Belk I, the regulations permit property to be substituted

---

  [4]  Although private letter rulings are not precedent, sec. 6110(k)(3), they do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws, Rowan Cos. v. United States, 452 U.S. 247, 261 n.17 (1981); Hanover Bank v. Commissioner, 369 U.S. 672, 686-687 (1962); Estate of Cristofani v. Commissioner, 97 T.C. 74, 84 n.5 (1991); Woods Inv. Co. v. Commissioner, 85 T.C. 274, 281 n.15 (1985).

**[\*10]** when continued use is impossible or impractical. <u>See</u> sec. 1.170A-14(c)(2), Income Tax Regs. However, petitioners' ability to substitute is not limited to such circumstances and, as we found in <u>Belk I</u>, the amendment provision does not limit substitutions to impossible or impractical situations. We remain unconvinced that the purpose and intent of section 170(h) would be frustrated if taxpayers are not permitted to change what real property is subject to the conservation easement without any limitations.

With respect to their first ground, petitioners have failed to show that reconsideration is appropriate.

Second Ground

Petitioners assert that we erred in deciding that the conservation easement agreement permitted substitutions. As discussed in <u>Belk I</u>, SMNLT cannot agree to an amendment that would result in the conservation easement's failing to qualifying as a qualified conservation contribution under section 170(h). The substitution provision states that a substitution is not final or binding on SMNLT until the conservation easement agreement is amended to reflect the substitution. We found that the substitution provision and amendment provision conflict.[5] We

_____

[5] Petitioners object to our finding that the substitution provision and amendment provision are in conflict. Petitioners argue that the provisions coexist,
(continued...)

**[\*11]** applied general rules of contract interpretation and looked to the parties'

intention to determine that the substitution provision overrode the amendment

provision.

Petitioners, citing N.C. Gen. Stat. sec. 39-1.1 (2011), argue that we erred in

applying the general rules of contract construction.  N.C. Gen. Stat. sec. 39-1.1

provides:  "In construing a conveyance executed after January 1, 1968, in which

there are inconsistent clauses, the courts shall determine the effect of the

instrument on the basis of the intent of the parties as it appears from all of the

provisions of the instrument."  Although we did not rely on N.C. Gen. Stat. sec.

39-1.1, it does not change our decision.  In Belk I we noted that the parties'

intention controls when interpreting a contract.  We determined that the parties'

intent, as it appeared from all the provisions of the conservation easement, was for

the conservation easement agreement to permit substitutions.

Petitioners appear to be arguing that the parties intended for the

conservation easement to be a qualified conservation contribution under section

170(h) and, thus, we should find that the conservation easement agreement does

---

⁵(...continued)
with the substitution provision simply providing the procedures for effecting amendments relating to substitutions.  However, we find that the provisions are unable to coexist when the amendment provision seemingly prohibits substitutions.

**[*12]** not permit substitutions. However, the parties included a specific, detailed provision in the conservation easement agreement permitting substitutions. It is inappropriate for the Court to ignore provisions included in the conservation easement agreement simply because petitioners planned to deduct the value of the conservation easement agreement. Our interpretation of the parties' intention is governed by what the parties actually included in the conservation easement agreement. It is well settled that a taxpayer's expectations and hopes as to the tax treatment of his conduct in themselves are not determinative, Commissioner v. Duberstein, 363 U.S. 278, 286 (1960), and that matters of taxation must be determined in the light of what was actually done rather than the declared purpose of the participants, Weiss v. Stearn, 265 U.S. 242, 254 (1924); see also Garcia v. Commissioner, 80 T.C. 491, 498 (1983) ("[T]he bare fact that a taxpayer desires to fall within a particular section of the Internal Revenue Code is not controlling where actions belie expressed intent").

With respect to their second ground, petitioners have failed to show that reconsideration is appropriate.

Third Ground

Petitioners assert that the Court has imposed an impossible and impractical requirement on taxpayers and qualified organizations. Petitioners argue that in the

**[\*13]** absence of a substitution provision, State law would still permit petitioners and SMNLT to modify the terms of the contract by mutual agreement. Thus, because they could change what property was subject to the conservation easement agreement even if there was not a substitution provision, the Court cannot deny their deduction because it includes a substitution provision in the conservation easement agreement. Respondent disagrees, stating that "[p]etitioners' interpretation of state law as giving parties unfettered ability to modify contracts is nonsensical and would make all conservation easements meaningless".

Petitioners confuse their right under State law to modify the terms of a contract by mutual consent with the effect such a modification would have for tax purposes. Even if petitioners and SMNLT had the right to modify the terms of the conservation easement agreement under State law by mutual agreement, North Carolina law does not dictate the resulting tax consequences of the modification. Whatever modifications petitioners might have envisioned making to the conservation easement agreement after the fact are irrelevant in determining the tax consequences of those provisions that were, in fact, included. Petitioners chose to include a provision in the conservation easement agreement that permits substitutions. See Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) ("[W]hile a taxpayer is free to organize his affairs as he

**[\*14]** chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not." (Internal citations omitted)).

When we evaluate a conservation easement under section 170(h), we consider the provisions contained in the conservation easement agreement. In Carpenter v. Commissioner, T.C. Memo. 2012-1, slip. op. at 4, the conservation easement deeds at issue contained a provision permitting the parties to extinguish the conservation easements by mutual agreement if the purpose of the conservation easement became impossible to accomplish.[6] The Court concluded because the easements could be extinguished by mutual consent of the parties, the easements were not protected in perpetuity and, therefore, were not qualified conservation contributions. Id., slip op. at 19. The Court stated that it was the "inclusion of the right of the parties to extinguish or terminate the conservation easements 'by mutual written agreement of both parties' that causes the issues before us." Id. at 10. In Carpenter, the Court did not concern itself with whether

---

[6] Under sec. 1.170A-14(g)(6), Income Tax Regs., extinguishment of a conservation easement is permitted by judicial proceeding if subsequent unexpected changes in the conditions surrounding the property make impossible or impractical the continued use of the property for conservation purposes.

[*15] the parties could have extinguished the conservation easements by mutual agreement without the extinguishment provision but simply looked to the fact that the conservation easement agreements contained such a provision. Similarly, here we do not consider whether the parties could have substituted property by mutual agreement without a substitution provision but simply look to the fact that the conservation easement agreement contained such a provision. Because the conservation easement agreement included a substitution provision, petitioners did not agree to restrict their use of the golf course in perpetuity.

Petitioners also argue that Belk I fails to consider that an element of trust and confidence is placed in a qualified organization that it will continue to carry out its mission to protect and conserve property.[7] Petitioners rely on Commissioner v. Simmons, 646 F.3d 6 (D.C. Cir. 2011), aff'g T.C. Memo. 2009-208. In Simmons, the conservation easement deed made with respect to building facades contained a provision that allowed the donee to consent to changes in the

_____

[7] We note that it is exactly because of the trust and confidence placed in qualified organizations that we presume such organizations would not agree to change what real property is subject to the conservation easement in the absence of a provision permitting substitutions. Petitioners' argument that they could, without a substitution provision, change what property was subject to the conservation easement by mutual agreement is premised on the assumption that SMNLT would have abdicated the trust and confidence placed in it to fulfill the purpose of the conservation easement and would have agreed to substitution.

[*16] facades or abandon its rights under the easement. Id. at 8. The Court of Appeals for the District of Columbia Circuit found that the provision did not affect whether the conservation purpose was protected in perpetuity because "[a]ny donee might fail to enforce a conservation easement, with or without a clause stating it may consent to a change or abandon its rights, and a tax-exempt organization would do so at its peril." Id. at 10.

While petitioners are correct that the courts trust qualified organizations to fulfill their responsibilities, that trust is based on the requirements imposed on the qualified organizations by the conservation easement and local law. In Simmons, the Court of Appeals found that the conservation easement deed and the District of Columbia's historic preservation laws prevented the donee from consenting to any changes in the property that were inconsistent with the conservation purpose. Id. Additionally, the Court of Appeals found that if the donee dissolved, the conservation easement would be transferred to the District of Columbia and reassigned to an organization similar to the donee. Id. at 8-9. Thus, the conservation purpose was protected at all times, even if the donee approved changes to the facade or dissolved.

Simmons is distinguishable from our case. In Simmons the conservation easement deed required the donee to enforce the restrictions on the facade in

**[*17]** perpetuity and the Court of Appeals trusted the donee to do so. Here, it is not a question of trust in SMNLT but a question of what the parties have agreed to do in the conservation easement agreement. Because the parties have agreed petitioners are able to substitute land, there is no restriction on the golf course in perpetuity that we can trust SMNLT to enforce.

With respect to their third ground, petitioners have failed to show that reconsideration is appropriate.

Conclusion

Petitioners have failed to demonstrate unusual circumstances or substantial errors of fact or law. Accordingly, we will deny petitioners' motion for reconsideration.

To reflect the foregoing,

An appropriate order

will be issued.