T.C. Summary Opinion 2018-47

UNITED STATES TAX COURT

JAMES MERLO, Petitioner, AND TRACY NELSON, f.k.a. TRACY MERLO,
Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10366-14S.                    Filed September 24, 2018.

James Merlo, pro se.

<u>Nicole Appleberry</u>, for intervenor.

<u>John D. Davis</u>, for respondent.

SUMMARY OPINION

GALE, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent mailed a notice of deficiency to petitioner and intervenor (Merlos) determining that for 2011 they had failed to report $4,628 in taxable wages that intervenor had received from Prudential Insurance Co. of America (Prudential), as had been reported to respondent on a Form W-2, Wage and Tax Statement, filed by Prudential. Petitioner timely petitioned for redetermination,[2] averring that he had no knowledge of, and had not received, the Form W-2 or the income referenced in the notice of deficiency. He further averred that the Form W-2 "references a different taxpayer and social security number".

Respondent later learned that the "different taxpayer" was petitioner's former spouse (now the intervenor) with whom petitioner had filed a joint return for 2011. On the basis of this information, respondent construed petitioner's claims in the petition as a request under section 6015 for relief from joint and

---

[1](...continued)
Code of 1986, as amended and in effect at all relevant times. All dollar amounts have been rounded to the nearest dollar.

[2]Intervenor did not file a petition with respect to the notice of deficiency.

several liability.[3]  Respondent thereupon served notice of the filing of the petition and the right to intervene upon intervenor, who timely intervened in this case.

Shortly before trial, respondent granted petitioner (hereafter, Mr. Merlo) relief under section 6015(c) with respect to the deficiency arising from the unreported income, on the grounds that it could not be established that Mr. Merlo had actual knowledge of the unreported Prudential wages of intervenor (hereafter, Ms. Nelson).  Ms. Nelson opposes that relief.  The issue for decision is whether Mr. Merlo is entitled to relief under section 6015(c) for 2011.[4]

Background

Some of the facts are stipulated and are so found.  The stipulation of facts and its exhibits are incorporated herein by this reference.  At the time Mr. Merlo filed his petition, he resided in Michigan and Ms. Nelson resided in Ohio.

For 2011 the Merlos received wage income totaling $112,674 consisting of: (1) $106,863 in wages paid to Mr. Merlo by the Department of the Treasury for his work as a revenue agent for the Internal Revenue Service (IRS), (2) $1,182 in

---

[3]Five days before filing his petition, petitioner filed an administrative claim for relief under sec. 6015.  Presumably respondent's counsel's discovery of this claim prompted him to characterize the issue raised in the petition as sec. 6015 relief.  In any event there is no dispute that the only issue in this case is petitioner's entitlement to sec. 6015 relief.

[4]Mr. Merlo has not sought relief under either sec. 6015(b) or (f).

wages paid to Ms. Nelson by Ethan Allen, Inc. (Ethan Allen), and (3) $4,629 in disability income paid to Ms. Nelson by Prudential, which Prudential reported as wage income on a Form W-2.

Although the Merlos maintained a joint checking account in 2011 and 2012, Ms. Nelson maintained a separate checking account during 2011 to which she had exclusive access.

Forms W-2 were mailed in early 2012 to the Merlos covering their respective items of the foregoing income at the residence they were still jointly occupying at the time.

Sometime before April 15, 2012, the Merlos timely filed a Form 4868, Application for Automatic Extension of Time To File U.S. Individual Income Tax Return, extending the due date of their 2011 Federal income tax return to October 15, 2012. Shortly thereafter, in May 2012, Ms. Nelson moved out of the marital residence and filed for divorce. Between the divorce filing and early October 2012 the Merlos seldom spoke, lived in separate households, and communicated primarily through their divorce counsel.

On October 12, 2012, three days before the return due date as extended, Mr. Merlo sent an email to his counsel for forwarding to Ms. Nelson. In the email he inquired whether Ms. Nelson wished to file a joint return with him for 2011.

The email also stated: "I believe the information for * * * [Ms. Nelson] is correct. A paper return does require the Form W-2 for * * * [Ms. Nelson] be attached which I do not have." Attached to the email was a draft of the Merlos' 2011 Federal income tax return (draft Federal return) prepared by Mr. Merlo, which reported $112,674 as the Merlos' total wage income. Mr. Merlo also attached to the draft Federal return a worksheet he had prepared that listed Ms. Nelson's wages from Ethan Allen and his wages from the Department of the Treasury as the only sources of the Merlos' total wage income of $112,674. On his worksheet Mr. Merlo treated Ms. Nelson's wages from Ethan Allen as $5,811 in reaching the total wages figure of $112,674 because Ms. Nelson had at some point advised him that she had total wages for 2011 in that amount.

On October 14, 2012, the Merlos communicated directly with each other three times via email. Therein, Ms. Nelson confirmed to Mr. Merlo that she had received a copy of his October 12 email and agreed to file a joint return with him for 2011. She proposed various changes to the draft Federal return, none of which concerned wage income.

Mr. Merlo also prepared a draft of the Merlos' 2011 Michigan income tax return (draft Michigan return). The Schedule W, 2011 Michigan Withholding Tax Schedule, attached to the draft Michigan return listed the components of the

Merlos' total wage income of $112,674 as coming from two sources: wages of $106,863 from the Department of the Treasury attributable to Mr. Merlo and wages of $5,811 from Ethan Allen attributable to Ms. Nelson.

Early on the morning of October 15, 2012, the due date for filing the 2011 return, Mr. Merlo emailed Ms. Nelson the draft Federal return and draft Michigan return for her to review for accuracy. Ms. Nelson responded by text, informing Mr. Merlo that he had misstated her wages from Ethan Allen on the draft returns as equal to $5,811 rather than $1,182, the correct figure. Mr. Merlo, now believing the draft returns to be incorrect, revised them by reducing Ms. Nelson's wage income from $5,811 to $1,182, a $4,629 difference. Mr. Merlo thereafter emailed Ms. Nelson a revised draft Form 1040 worksheet for her to review at 7:20 a.m. The worksheet listed the Merlos' wage income as $108,045, consisting of $106,863 in wages from the Department of the Treasury and $1,182 in wages from Ethan Allen.

Mr. Merlo agreed to leave copies of the revised Federal and Michigan returns for Ms. Nelson to sign at the residence they had previously occupied together. Ms. Nelson confirmed with Mr. Merlo that she needed to attach her Form W-2 for the Ethan Allen wages to the returns, and he clarified that the Form

W-2 needed to be attached only to the Federal return. The Merlos' Federal return was timely filed on October 15, 2012, reporting total wage income as $108,045.

On June 14, 2013, the Merlos divorced. As noted, respondent issued a notice of deficiency for 2011 to the Merlos in which he determined that they had failed to report $4,628[5] of Ms. Nelson's wage income from Prudential. Mr. Merlo sought section 6015 relief for 2011 administratively and also timely petitioned for redetermination of the deficiency for that year. Respondent granted Mr. Merlo relief under section 6015(c) with respect to the unreported Prudential income shortly before trial. Ms. Nelson intervened in the deficiency case and opposes such relief.[6]

## Discussion

Married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). If a joint return is made, generally each spouse is jointly and severally

---

[5]In the notice of deficiency, respondent apparently rounded down Ms. Nelson's $4,628.57 of wage income from Prudential to $4,628. In our findings we have used $4,629 as the correctly rounded figure, consistent with Mr. Merlo's computations when he prepared the 2011 return.

[6]Our jurisdiction over this case is unimpaired by respondent's concession that Mr. Merlo is entitled to sec. 6015 relief with respect to the deficiency, as the notice of deficiency was timely petitioned and Mr. Merlo's entitlement to sec. 6015 relief is an affirmative defense to the deficiency, which Ms. Nelson as intervenor disputes. See Butler v. Commissioner, 114 T.C. 276, 288 (2000); Young v. Commissioner, T.C. Memo. 2012-255, at *3; see also Corson v. Commissioner, 114 T.C. 354, 363 (2000).

liable for the entire tax due on their aggregate income for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). However, in certain circumstances, section 6015 allows a spouse to obtain relief from joint and several liability. Sec. 6015(a). One such circumstance is found in section 6015(c), under which respondent has granted Mr. Merlo relief. Ms. Nelson opposes that relief. The standard and scope of our review of Mr. Merlo's entitlement to section 6015(c) relief is de novo. See Porter v. Commissioner, 132 T.C. 203, 210 (2009).

Section 6015(c) generally allows a separated or divorced spouse to elect to limit the liability for any deficiency assessed with respect to a joint return to the portion of the deficiency that is properly allocable to the electing individual under section 6015(d). See Estate of Capehart v. Commissioner, 125 T.C. 211, 214 (2005); Barnes v. Commissioner, T.C. Memo. 2004-266; sec. 1.6015-3(a), Income Tax Regs. Section 6015(d) generally allocates the items giving rise to the deficiency as if the spouses had filed separate returns. Sec. 6015(d)(3)(A). The parties do not dispute that the disability income from Prudential (reported as wages) is properly allocable to Ms. Nelson pursuant to section 6015(d).

To be eligible for section 6015(c) relief, the electing spouse must establish that: (1) the spouses filed a joint return for the year at issue; (2) the spouses were, at the time the election for relief was made, legally separated or divorced or had

not been members of the same household at any time during the previous 12 months; (3) the election for relief was made after a deficiency was determined but no later than two years after the Commissioner began collection activities; and (4) the deficiency remains unpaid. See sec. 6015(c)(1), (3)(A) and (B); Stergios v. Commissioner, T.C. Memo. 2009-15; sec. 1.6015-3(c)(1), Income Tax Regs. The parties do not dispute that these threshold requirements are satisfied.

The dispute here involves section 6015(c)(3)(C), which denies otherwise available section 6015(c) relief to the electing spouse if it is shown that he or she "had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d)". Sec. 6015(c)(3)(C).

The statute imposes upon the Commissioner the burden of proof to demonstrate actual knowledge. See, e.g., Mitchell v. Commissioner, 292 F.3d 800, 804 (D.C. Cir. 2002), aff'g T.C. Memo. 2000-332; Culver v. Commissioner, 116 T.C. 189, 195-196 (2001); Martin v. Commissioner, T.C. Memo. 2000-346; Wiksell v. Commissioner, T.C. Memo. 1999-32, aff'd without published opinion, 215 F.3d 1335 (9th Cir. 2000). The level of proof required is by a preponderance of the evidence. Culver v. Commissioner, 116 T.C. at 196.

Actual knowledge "is an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof). In the case of omitted income * * *, the electing spouse must have an awareness of the omitted income." Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002). The applicable standard is the electing spouse's "actual subjective knowledge." Culver v. Commissioner, 116 T.C. at 197. Actual knowledge is not to be inferred from evidence that the electing spouse merely had reason to know of the omitted income. See S. Rept. No. 105-174, at 59 (1998), 1998-3 C.B. 537, 595 ("[A]ctual knowledge must be established by the evidence and shall not be inferred based on indications that the electing spouse had a reason to know.").

Respondent concedes Mr. Merlo's entitlement to relief under section 6015(c), having concluded that it cannot be demonstrated that he had actual knowledge of Ms. Nelson's Prudential income. Ms. Nelson disagrees. While, as noted, the burden of proof is ordinarily on the Commissioner to demonstrate actual knowledge, a procedural issue arises where the Commissioner concedes the requesting spouse's entitlement to section 6015(c) relief and the only party opposing it is the nonrequesting spouse. The Court has resolved this problem by determining whether actual knowledge has been demonstrated by a preponderance

of the evidence as presented by all three parties.  See Young v. Commissioner, T.C. Memo. 2012-255, at *10; Pounds v. Commissioner, T.C. Memo. 2011-202, slip op. at 13; Stergios v. Commissioner, slip op. at 10-11.  We therefore consider whether Mr. Merlo's actual knowledge of the omitted Prudential income  has been demonstrated by a preponderance of the evidence presented by all three parties.

We conclude that it has not been established by a preponderance of the evidence that Mr. Merlo had actual knowledge of the omitted Prudential income. Mr. Merlo testified that he believed Ms. Nelson's only source of wage income for 2011 was Ethan Allen and that he was unaware that she had received any disability income from Prudential during that year.  He further testified that Ms. Nelson had orally advised him at some point that her total wage income for that year was $5,811.  Thus, Mr. Merlo contends, when he sent Ms. Nelson the draft Federal return with a worksheet indicating that her Ethan Allen wages were $5,811 and she responded by asserting that the correct figure was $1,182, he believed his initial figure was erroneous and adjusted it to $1,182.  In so doing he reduced reported income by $4,629--the amount of the omitted Prudential income.

Mr. Merlo's testimony is corroborated by contemporaneous documentation. The worksheet attached to the draft Federal return and the Schedule W attached to the draft Michigan return, both prepared by Mr. Merlo, listed $5,811 as Ms.

Nelson's wages <u>from Ethan Allen</u>. That figure actually represented the total of Ms. Nelson's Ethan Allen wages of $1,182 and her Prudential income of $4,629, but Mr. Merlo's having listed the total as all coming from Ethan Allen confirms that he believed Ethan Allen was the source of all of Ms. Nelson's wage income at the time he prepared the 2011 return. Moreover, in his email of October 12, 2012, he advised the couple's respective divorce counsel that he did not have any Form W-2 from her. At the time that was not a self-serving statement.

Mr. Merlo's lack of knowledge of the Prudential income is supported circumstantially as well. Ms. Nelson maintained a separate bank account during 2011. It can be readily inferred that she deposited her checks from Prudential there, which removes a means by which Mr. Merlo could have obtained actual knowledge of the income. Moreover, in contrast to her having worked at Ethan Allen, she could have applied for and obtained disability benefits without Mr. Merlo's having become aware of these actions.

We are persuaded that Mr. Merlo's lack of knowledge of Ms. Nelson's Prudential income and his good-faith belief that the only source of her wage income was Ethan Allen are what caused him to adjust her total wage income downward from $5,811 to $1,182 when she advised him that the latter figure was the correct amount of her wage income from Ethan Allen.

Ms. Nelson testified that when she moved out of the marital residence she left copies of all of her Forms W-2, including those from Ethan Allen and Prudential, in a tax file maintained there by Mr. Merlo, retaining the originals for herself. Her testimony is uncorroborated, and it is contradicted by Mr. Merlo's contemporaneous email of October 12, 2012, in which he stated that he did not have a Form W-2 from her. Moreover, we are not persuaded that Mr. Merlo, an IRS revenue agent, would have prepared worksheets that listed Ms. Nelson's Ethan Allen wages as $5,811 if he in fact had copies of her Forms W-2 showing that her wage income, while in total equal to $5,811, actually consisted of $1,182 from Ethan Allen and $4,629 from Prudential. Finally, we note that Ms. Nelson, having been provided Mr. Merlo's worksheet accompanying the draft Federal return that made no mention of the Prudential income, had ample opportunity to alert Mr. Merlo to the omission but failed to do so, even though by her own admission she had the originals of the Forms W-2 that had been issued to her. Her silence tended to confirm Mr. Merlo's belief that he had merely overstated her Ethan Allen wages in the worksheet and had not omitted income from another source.

We likewise are unpersuaded by Ms. Nelson's contention that Mr. Merlo, as her estranged spouse, deliberately omitted her Prudential income from the 2011 return as filed in order to create problems for her with the IRS. As an IRS revenue

agent, Mr. Merlo surely knew that failing to report income that had been reported to the IRS on a Form W-2 would trigger IRS scrutiny of the return that would almost certainly result in a determination of a deficiency for which he would be jointly and severally liable. Indeed, that is what happened here. Given Mr. Merlo's familiarity with IRS procedures, it is not reasonable to believe he deliberately failed to report Form W-2 income for which he had actual knowledge, as he would have been aware that he was creating the same problems with the IRS for himself as Ms. Nelson speculates he intended to cause for her.

In sum, Mr. Merlo's version of events, premised on his lack of actual knowledge of the omitted Prudential income, is plausible and corroborated by contemporaneous documents. Ms. Nelson's contentions and testimony to the effect that Mr. Merlo had actual knowledge of that income are implausible and without support from, and to some extent are contradicted by, the record. In view of the foregoing, we conclude that a preponderance of the evidence does not establish that Mr. Merlo had actual knowledge of the Prudential income, as would be required to disqualify him from the section 6015(c) relief to which he is otherwise entitled. Accordingly, pursuant to section 6015(c), Mr. Merlo is not liable for the deficiency for the Merlos' 2011 taxable year determined by

respondent, as it is attributable entirely to the failure to report income allocable to Ms. Nelson under section 6015(d).

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>petitioner</u>.