T.C. Memo. 2016-129

UNITED STATES TAX COURT

BONNIE MARIA ARMOUR, Petitioner AND MARK V. POULSEN, Intervenor
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7079-14.                     Filed July 11, 2016.

Bonnie Maria Armour, pro se.

<u>John S. Pontius, Jr.</u>, <u>Glen E. Frost</u>, and <u>Jessica F. Marine</u>, for intervenor.

<u>Timothy B. Heavner</u>, <u>Matthew S. Reddington</u>, and <u>Wendy C. Yan</u>, for respondent.

[*2]       MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge: This case is before us with respect to respondent's denial of petitioner's request for relief from joint and several liability under section 6015[1] for 2007, 2008, and 2009 (years involved). Petitioner and intervenor were married during the years involved; they separated in 2009 and divorced in 2010 after nearly 20 years of marriage.  Petitioner and intervenor filed their 2007, 2008, and 2009 Forms 1040, U.S. Individual Income Tax Return, as married filing jointly. Following an audit of petitioner and intervenor's joint income tax returns, on March 9, 2013, petitioner signed a Form 870-AD, Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment, agreeing to the assessment and collection of income tax deficiencies and penalties under section 6662(a) as follows:[2]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, at all relevant times.  All dollar amounts are rounded to the nearest dollar.

[2]Intervenor has no legal obligation to pay the outstanding tax liability pursuant to the divorce decree.  Intervenor has paid approximately $75,000 of the outstanding tax liability while petitioner has made no such payment.  The record does not reveal for which tax year(s) intervenor's payment was applied. Regardless of whether intervenor's payment satisfied any year's tax liability, that payment does not render petitioner's request for relief from joint and several liability moot.  See Kaufman v. Commissioner, T.C. Memo. 2010-89.

[*3]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2007 | $24,186 | $4,837 |
| 2008 | 73,343 | 14,018 |
| 2009 | 3,753 | -0- |

On the same day she signed the Form 870-AD, petitioner signed a Form 8857, Request for Innocent Spouse Relief, and filed it with the Internal Revenue Service (IRS). Petitioner's request for relief was denied on March 17, 2014.

FINDINGS OF FACT

Some of the facts in this matter have been stipulated and are so found. At the time she filed her petition, petitioner resided in Maryland. Petitioner holds a high school diploma. She attended the University of Delaware for six months, taking noncredit courses in data processing.

While married, petitioner and intervenor owned the marital home, two rental properties and a farm. Because petitioner and intervenor had a large blended family, they owned a large van in addition to two pickup trucks and an Oldsmobile Cutlass, which intervenor described as a "classic car". They took family vacations each year, including trips to Bermuda and Mexico. They enjoyed camping, and throughout the years they purchased several campers, which they used on family camping trips every few months.

[*4]   Intervenor owned M.V.P. Builders,[3] which was the primary source of the family's income.  Established in the early 1980s, M.V.P. Builders is a home improvement company focusing on residential remodeling.  A carpenter by trade, intervenor operated the business, but he did not have the bookkeeping background to maintain the company's records.  He hired petitioner to be the company's bookkeeper and office manager.  Their relationship blossomed, and they eventually wed.

Petitioner was M.V.P. Builders' bookkeeper/office manager for approximately 20 years, including the years involved.  She developed and maintained the accounting program used by the business.  Her duties included:  (1) managing the company's financial records, bank accounts, and American Express credit card account; (2) managing the company's "end of the month check run", which reconciled all charge accounts that M.V.P. Builders had from its vendors, roofing suppliers, lumber yards, plumbing supply houses, and other subcontractors; (3) reconciling the company's bank and credit card statements; (4) managing the accounts payable and accounts receivable; (5) tracking inventory; and (6) managing the company's payroll.  To these ends, petitioner had authority

---

[3]During the years involved M.V.P. Builders was a sole proprietorship.  It was later incorporated at a time not specified in the record.

[*5] to write and sign checks on behalf of M.V.P. Builders, deposit money into the company's accounts, and prepare checks and receipts for the business. Petitioner was familiar with M.V.P. Builders' clients and knew, or at least could have learned, the amounts they paid the company. Before becoming M.V.P. Builders' bookkeeper, petitioner had other experience in accounting.

When petitioner managed M.V.P. Builders' finances, her duties included the end-of-year accounting for the company. She reviewed the company's books and provided information and documents to the company's certified public accountant (C.P.A.), Joe Tigne, who prepared petitioner and intervenor's joint tax returns. She also met and interacted with Mr. Tigne during the years involved. She admitted to "booking things wrong" for M.V.P. Builders and was advised that she had done so by Mr. Tigne.

For 2007 petitioner and intervenor's joint returns underreported income attributable to M.V.P. Builders; for 2008 the returns underreported income and overstated expenses attributable to M.V.P. Builders. The IRS made no adjustments with respect to M.V.P. Builders for 2009.

In addition to working for M.V.P. Builders, petitioner operated a horse care and boarding business on the farm that she and intervenor owned. She exclusively controlled the business, and under her stewardship the business' income for each

**[*6]** of the years involved was underreported. All adjustments made by the IRS for 2009 were due to underreported income with respect to the horse care and boarding business.

Petitioner wrote checks drawn on M.V.P. Builders' bank account to herself, and she used the M.V.P. Builders' American Express credit card to pay horse care and boarding business and household expenses.

Petitioner was given the joint income tax returns for 2007, 2008, and 2009 before they were filed, but she did not review them before signing them. Petitioner was not a victim of spousal abuse or domestic violence during the years involved.

Respondent filed his posttrial brief on January 27, 2016. Intervenor notified the Court on that same day that he would not file a brief. Petitioner's reply brief was due by April 13, 2016. No brief was filed by petitioner.

OPINION

I.    Introduction to Relief From Joint and Several Liability

In general, married taxpayers who file a joint Federal income tax return under the provisions of section 6013(a) and (d)(3) are jointly and severally liable for the tax reported or reportable on the tax return. Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief from joint and

**[*7]** several liability under subsection (b). Section 6015(a)(2) provides that if an individual is eligible to elect the application of subsection (c), that individual may, in addition to any election under subsection (a)(1), elect to limit his/her liability for any deficiency with respect to the joint return in a manner prescribed in subsection (c) of section 6015.

II.     Section 6015(b) Relief

Section 6015(b)(1) provides that a taxpayer will be relieved of liability for an understatement of tax if: (A) a joint return was made for the taxable year in question; (B) there is an understatement of tax attributable to erroneous items of the nonrequesting spouse; (C) the requesting spouse "establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement"; (D) taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the deficiency attributable to the understatement; and (E) the requesting spouse elects to invoke subsection (b) within two years after the date the Secretary has begun collection actions with respect to the requesting spouse.

The requirements of section 6015(b)(1) are conjunctive. Failure of a requesting spouse to satisfy any one of the elements precludes relief. Alt v. Commissioner, 119 T.C. 306, 313 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

**[\*8]** The requesting spouse bears the burden of proving entitlement to section 6015(b) relief.  Id. at 311.

Respondent concedes that petitioner satisfies the requirements of section 6015(b)(1)(A) and (E) (petitioner and intervenor filed joint tax returns for 2007, 2008, and 2009, and petitioner sought relief within the two-year limitations period) but asserts that petitioner does not meet the requirements of subparagraphs (C) (the spouse requesting relief must establish he/she did not know, and had no reason to know, of the understatement of tax on the returns[4]) and (D) (it would be inequitable to hold the requesting spouse liable for the deficiency).

We agree with respondent that the requirements of section 6015(b)(1)(C) have not been met in that petitioner did not establish that she did not know, and had no reason to know, of the understatements of tax.  As a preliminary matter, petitioner concedes she is responsible for the understatement of tax attributable to the horse care and boarding business and therefore she does not qualify for relief with respect to the unpaid tax attributed thereto.  Petitioner maintains she is entitled to relief from liability with respect to the deficiencies attributable to

---

[4]"The requirement in section 6015(b)(1)(C) * * * is virtually identical to the same requirement of former section 6013(e)(1)(C); therefore, cases interpreting former section 6013(e) remain instructive to our analysis."  Doyel v. Commissioner, T.C. Memo. 2004-35, 2004 WL 238022, at \*8.

[*9] M.V.P. Builders because she was not the owner of the company and only made data entries. We disagree. As M.V.P. Builders' bookkeeper and office manager for approximately two decades, including the years involved, petitioner was directly responsible for maintaining all records relating to the company's finances. She had access to the business' checking accounts, credit card account, payroll, bills, receipts, and deposits; she wrote checks, made the bank deposits, and reconciled the company's bank records. She provided the information and documentation that the C.P.A. used in connection with the preparation of petitioner and intervenor's joint income tax returns. And despite having access to the information underlying the income and expenses reported on the joint income tax returns, petitioner failed to review the returns, or inquire as to their accuracy, before they were filed.

In sum, we find that petitioner knew of the understatements of tax on each of the returns filed for each of the years involved within the meaning of section 6015(b)(1)(C). Accordingly, petitioner is not entitled to the requested relief from joint and several liability under section 6015(b).[5]

---

[5]Because we agree with respondent that the requirements of sec. 6015(b)(1)(C) have not been met, we do not address the requirements of subpara. (D).

**[*10]** III.    Section 6015(c) Relief

Section 6015(c) provides that a divorced or legally separated spouse may elect to limit liability for a deficiency on a joint return to the portion allocable to him or her under subsection (d); i.e., the tax liability is allocated between the individuals who filed a joint return in approximately the same way it would have been had the individuals filed separately.

To be eligible for section 6015(c) relief, the electing spouse must establish that:  (1) the spouses filed joint returns for the years involved; (2) at the time the election for relief was made, the spouses were legally separated, divorced, or had not been members of the same household anytime during the previous 12 months; and (3) the request for relief was made within two years of the first collection activity.  See sec. 6015(c)(1), (3).  Moreover, no assets may be transferred between the spouses in a fraudulent scheme.  See sec. 6015(c)(3)(A)(ii).  Respondent does not dispute that petitioner meets these requirements.

Relief under section 6015(c) is not available where the Commissioner demonstrates that the requesting spouse had actual knowledge at the time he/she signed the return of any item giving rise to a deficiency which is not allocable to the requesting spouse under section 6015(d).  Sec. 6015(c)(3)(C).  The knowledge standard for purposes of section 6015(c)(3)(C) is "an actual and clear awareness

[*11] (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof)." Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002); see also Grossman v. Commissioner, 182 F.3d 275, 279 (4th Cir. 1999), aff'g T.C. Memo. 1996-452.

If an item of income is omitted, the requesting spouse must have actual knowledge of the income, which includes knowledge of the receipt of the income. Harrington v. Commissioner, T.C. Memo. 2012-285; sec. 1.6015-3(c)(2)(i)(A), Income Tax Regs. We do not infer actual knowledge from a mere reason to know of the omitted income. Harrington v. Commissioner, T.C. Memo. 2012-285; sec. 1.6015-3(c)(2)(iii), Income Tax Regs. Similarly, a requesting spouse must have actual knowledge of an improperly deducted item on a return. In and of itself, the requesting spouse's knowledge that a deduction appears on the return is insufficient. King v. Commissioner, 116 T.C. 198, 205 (2001). The requesting spouse has actual knowledge of an erroneous deduction if he/she has knowledge of the factual circumstances which made the item unallowable as a deduction. Id. at 204; sec. 1.6015-3(c)(2)(i)(B)(1), Income Tax Regs.

With respect to the unpaid tax attributable to the horse care and boarding business, petitioner concedes she is responsible for these amounts as she was responsible for operating the horse care and boarding business. These amounts are

[*12] therefore allocable to petitioner, i.e., the requesting spouse. With respect to the unpaid tax attributable to M.V.P. Builders, we find that petitioner had actual knowledge of the company's unreported income and excessive deductions. As previously stated, petitioner managed the company's books and finances and was well aware of the company's actual income and outlays. Petitioner also collected and provided the company's financial information and documentation to the family's C.P.A., Mr. Tigne, to allow him to prepare her and intervenor's joint income tax returns. She was aware of M.V.P. Builders' receipt of income. And she had knowledge of the factual circumstances of the company's expenses, giving her knowledge of the factual circumstances which made the claimed expense items unallowable as deductions.

We therefore hold that petitioner is not entitled to the requested relief from joint and several liability under section 6015(c).

IV.    Section 6015(f) Equitable Relief

Section 6015(f) provides for equitable relief under procedures prescribed by the Secretary if: (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency and (2) relief is not available to the requesting spouse under subsection (b) or (c). The

**[\*13]** requesting spouse has the burden of proving that he/she is entitled to relief. Alt v. Commissioner, 119 T.C. at 311. We apply a de novo scope and standard of review in reviewing the requesting spouse's prayer for relief. Porter v. Commissioner, 132 T.C. 203, 210 (2009).

Respondent concedes that petitioner meets the requirement of section 6015(f)(2), in that relief is not available under subsection (b) or (c). With respect to section 6015(f)(1), the Commissioner published Rev. Proc. 2013-34, 2013-43 I.R.B. 397, outlining the factors the IRS normally considers in deciding whether section 6015(f) relief should be granted. While this Court is not bound by IRS revenue procedures, we often look to them for guidance. Hollimon v. Commissioner, T.C. Memo. 2015-157, at \*7-\*8; see Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).

Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. at 399-403, sets forth a three-step procedure to be followed in evaluating requests for relief: (1) section 4.01 lists seven threshold conditions which must be met; (2) section 4.02 lists circumstances in which the IRS will make streamlined relief determinations; and (3) section 4.03 sets forth nonexclusive factors that the IRS will consider in determining whether equitable relief should be granted because it would be inequitable to hold a requesting spouse jointly and severally liable.

**[*14]** The seven eligibility conditions, all of which must be satisfied for the IRS to

consider a claim for equitable relief under section 6015(f), pursuant to Rev. Proc.

2013-34, sec. 4.01, are as follows:

> (1) The requesting spouse filed a joint return for the taxable year for which he or she seeks relief.

> (2) Relief is not available to the requesting spouse under section 6015(b) or (c).

> (3) The claim for relief is timely filed * * *

> (4) No assets were transferred between the spouses as part of a fraudulent scheme by the spouses.

> (5) The nonrequesting spouse did not transfer disqualified assets to the requesting spouse * * *

> (6) The requesting spouse did not knowingly participate in the filing of a fraudulent joint return.

> (7) The income tax liability from which the requesting spouse seeks relief is attributable (either in full or in part) to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. If the liability is partially attributable to the requesting spouse, then relief can only be considered for the portion of the liability attributable to the nonrequesting spouse. Nonetheless, the Service will consider granting relief regardless of whether the understatement, deficiency, or underpayment is attributable (in full or in part) to the requesting spouse if any of the following exceptions applies:  (a) Attribution solely due to the operation of community property law. * * *(b) Nominal ownership. * * * (c) Misappropriation of funds. * * * (d) Abuse. * * * (e) Fraud committed by nonrequesting spouse.

**[\*15]** Petitioner acknowledges that the understatement in tax arising from the horse care and boarding business is attributable to her.  Because condition 7 is not satisfied, petitioner concedes she is ineligible for relief with respect to the understatement of tax attributable to the horse care and boarding business.  However, with respect to the understatements attributable to M.V.P. Builders, because petitioner did not hold an ownership interest in the company, and because respondent concedes that petitioner meets all other threshold conditions set forth in Rev. Proc. 2013-34, sec. 4.01, we move on to the next step in our analysis.

Rev. Proc. 2013-34, sec. 4.03,[6] provides a list of nonexclusive factors to be weighed by the IRS in making a decision.  They include (a) marital status (i.e., do the spouses remain together?); (b) economic hardship; (c) knowledge or reason to know of the requesting spouse; (d) legal obligation arising from a divorce decree or other binding agreement; (e) significant benefit gained by the requesting spouse; (f) compliance with income tax laws; and (g) mental or physical health at the time of filing the request for relief.  No single factor is determinative, and all factors are considered and weighed appropriately.  Kellam v. Commissioner, T.C. Memo. 2013-186, at \*26.

---

[6]Petitioner has not asserted that she qualifies for the streamlined procedures for relief provided in Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. 397, 400.  We therefore do not address them.

**[*16]** Respondent concedes that (a) marital status and (f) compliance with tax laws weigh in favor of relief. We therefore limit our inquiry to factors (b) economic hardship, (c) knowledge or reason to know, (d) legal obligation, (e) significant benefit, and (g) mental/physical health.

1.  Economic Hardship

Rev. Proc. 2013-34, sec. 4.03(2)(b), provides that an economic hardship "exists if satisfaction of the tax liability in whole or in part will cause the requesting spouse to be unable to pay reasonable basic living expenses." Whether a requesting spouse will suffer economic hardship is based on rules similar to those in section 301.6343-1(b)(4), Proced. & Admin. Regs. The facts and circumstances considered include: (1) the requesting spouse's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food, clothing, housing, medical expenses, transportation, and current tax payments; and (3) any extraordinary circumstances such as special educational expenses, a medical catastrophe, or a natural disaster. Id. In addition, the IRS considers the requesting spouse's current income (including how the requesting spouse's income compares to Federal poverty guidelines) and assets in comparison with his/her expenses. Rev. Proc. 2013-34, sec. 4.03(2)(b). Factor (b) (economic hardship) weighs in favor of relief where the

[*17] requesting spouse would suffer economic hardship if relief were denied and is neutral where the requesting spouse would not suffer such hardship if relief were denied. Id. At trial petitioner established to the Court's satisfaction that she was in some economic difficulty.[7] Consequently, we find that this factor weighs in favor of relief.

### 2. Knowledge or Reason To Know

Under this factor we examine whether the requesting spouse knew, or had reason to know, that there was an understatement or deficiency on the joint income tax return, or did not know, or had reason to know, that the nonrequesting spouse would not or could not pay a reported but unpaid tax liability. See id. sec. 4.03(2)(c)(ii). The factors enunciated in the revenue procedure are essentially the same as those relied upon by section 6015(b)(1)(C) and (c). As discussed supra, petitioner operated the horse care and boarding business and had charge of M.V.P. Builders' books and finances. Petitioner had reason to know of the understatements of tax. Moreover, petitioner has not claimed that she was abused

---

[7]We note the Cincinnati Centralized Innocent Spouse Operation's determination that the economic factor favored relief as petitioner's gross income was at 250% or less of the Federal poverty line and that she did not have sufficient assets to make payments and still pay basic family living expenses. The IRS Appeals officer's own analysis indicated that petitioner's household income was below the Federal poverty line and her expenses were slightly less than her income. Yet the Appeals officer found that this factor was neutral.

**[*18]** by intervenor or that he restricted her access to financial information. We find this factor weighs against relief.

### 3. Legal Obligation

Rev. Proc. 2013-34, sec. 4.03(d) provides that if the nonrequesting spouse has the sole legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or other legally binding agreement, this factor will weigh in favor of relief. There is no evidence that intervenor has any legal obligation to pay any outstanding income tax liabilities for the years involved. We find this factor to be neutral.

### 4. Significant Benefit

Under this factor we consider whether the requesting spouse received a significant benefit, beyond normal support, from the unpaid income tax liability. Id. sec. 4.03(2)(e). Normal support is measured by the circumstances of the particular parties. Porter v. Commissioner, 132 T.C. at 212. This factor will weigh in favor of relief if the nonrequesting spouse significantly benefited from the unpaid tax or understatement and the requesting spouse had little or no benefit or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment. Id.

**[*19]** Petitioner wrote checks to herself from M.V.P. Builders' checking account for personal use and to support her horse care and boarding business. We find this factor weighs against relief.

5.      Mental/Physical Health

There is no evidence that petitioner was ill when she signed the returns for the years involved or when she requested relief. Nor did she appear to be in ill health at trial. We find this factor weighs against relief. See Pullins v. Commissioner, 136 T.C. at 454.

6.      Conclusion

We conclude that petitioner is not entitled to relief from joint and several liability under section 6015(f) for any of the years involved. The most significant factor in reaching our conclusion is that petitioner had knowledge of the understatements of tax or deficiencies with respect to the joint income tax returns. Petitioner was directly responsible for the underreporting of income with respect to the horse care and boarding business and, as M.V.P. Builders' bookkeeper/office manager, she knew of the underreporting of income and excessive expense deductions attributable to that business.

**[\*20]**  To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.