T.C. Memo. 2021-20

UNITED STATES TAX COURT

VIKKI L. ROGERS,[1] Petitioner, AND BRIAN D. ROGERS, Intervenor <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8930-17.                              Filed February 22, 2021.

Michael J. Calabrese, for petitioner.

Andrew Y. Belter, for intervenor.

George W. Bezold and Mark J. Miller, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, Judge:  Pursuant to section 6015(e)(1), petitioner seeks review of

respondent's determination that she is not entitled to relief from joint and several

liability under section 6015(b), (c), or (f) for tax years 2010 and 2011 (years at

_____

[1]After filing the petition, petitioner returned to her maiden name, Triggs.

[*2] issue) with respect to the joint Federal income tax returns that she filed with intervenor, her former spouse.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Both petitioner and intervenor individually resided in Wisconsin when the petition was filed.

Petitioner and intervenor married in 1993. They jointly owned Capital City Tent Rental, LLC (Capital City Tent), a Wisconsin limited liability company that rented and set up tents, tables, and chairs.[3] Petitioner is a high school graduate. Because she has some banking education and had worked at a bank for a few years, petitioner was primarily responsible for maintaining Capital City Tent's books and records, hiring a payroll company, tracking billing, making loan payments, and making credit card payments. Petitioner also had signature

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[3]In March 2000 intervenor and his father, who still owned a large portion of Capital City Tent at the time, had it elect to be treated as an S corporation. On November 1, 2000, intervenor's father transferred his interest in Capital City Tent to petitioner and intervenor.

**[\*3]** authority on Capital City Tent's bank account, prepared and signed sales tax returns and unemployment tax contribution forms on behalf of the business, and worked with an accountant to prepare Capital City Tent's tax returns. Intervenor was responsible for: (1) managing employees, (2) maintaining customer relations, (3) answering phones, (4) accepting orders, (5) preparing and submitting job bids, (6) making needed repairs, and (7) assisting with bookkeeping.

Additionally, petitioner solely owned two other businesses: (1) Capital City Rentals, Inc. (Capital City Rentals), which rented bounce houses and jumping castles, and (2) Twilight Pony Rides, which offered pony rides. Intervenor occasionally provided the manual labor for these businesses. Petitioner also engaged Capital City Tent's accountant to prepare tax returns for Capital City Rentals.

For the years at issue petitioner and intervenor untimely filed joint Forms 1040, U.S. Individual Income Tax Return. On their 2010 they reported that no tax was due and requested a refund of $4,547. On their 2011 return they reported a tax liability of $5,608 and requested a refund of $7,324. Respondent audited these tax returns and determined deficiencies, finding that petitioner and intervenor had understated their tax liabilities because of disallowed deductions associated with Capital City Tent and claimed on Schedules E, Supplemental Income and Loss.

[*4] On January 7, 2014, petitioner and intervenor signed Forms 4549, Income Tax Examination Changes, consenting to the assessment and collection of the deficiency amounts, plus penalties and interest, totaling $11,609 and $21,672 for tax years 2010 and 2011, respectively. Neither petitioner nor intervenor has paid the assessed tax, penalties, and interest for the years at issue.

On July 1, 2014, the Circuit Court, Branch 8, in Dane County, Wisconsin, issued petitioner and intervenor a decree of divorce. On August 23, 2014, the court entered a judgment of divorce incorporating a Marital Settlement Agreement (agreement) between petitioner and intervenor.[4] Pursuant to the agreement, intervenor was awarded the "business or professional interests" in Capital City Tent. The agreement stipulated, however, that petitioner and intervenor remained jointly liable for the assessed tax liabilities, penalties, and interest for the years at issue.

On July 31, 2015, respondent received from petitioner a Form 8857, Request for Innocent Spouse Relief, seeking relief for tax years 2006 through 2011. On the Form 8857, petitioner reported a total monthly income of $1,297 and total monthly expenses of $2,203. Petitioner stated that she was not involved

---

[4]Petitioner did not sign the agreement even though she was given sufficient time to do so. The judge presiding over the divorce proceedings nevertheless incorporated the agreement into the judgment of divorce without her signature.

[*5] in handling the household finances, was not involved in preparing her and intervenor's joint tax returns for the years at issue, and had no knowledge that anything was incorrect or missing when the returns were filed. Petitioner further represented on the Form 8857 that neither she nor intervenor incurred any large expenses, such as trips, home improvements, or private schooling, or made any large purchases, such as automobiles, appliances, or jewelry, during the years at issue. Petitioner asserted that she was a victim of spousal abuse; however, she noted that law enforcement was never called, intervenor was never arrested or charged, and she never sought help from a local domestic violence program. Petitioner also averred that she was not in poor mental or physical health when she and intervenor jointly filed their Federal income tax returns for tax years 2006 through 2011 or at the time that she filed the Form 8857.

On August 18, 2016, respondent issued a notice of preliminary determination denying petitioner's request for innocent spouse relief for the years at issue under section 6015(b), (c), and (f).[5] On September 19, 2016, petitioner timely submitted Form 12509, Statement of Disagreement, requesting reconsideration. In February 2017 petitioner came into compliance with her then-

---

[5]Respondent made a preliminary determination only for tax years 2010 and 2011 because petitioner had no tax liabilities for tax years 2006 through 2009.

[*6] current tax return filing obligation by filing her Federal income tax return for tax year 2016, and she also filed her tax returns for tax years 2012 through 2015.

On February 15, 2017, intervenor submitted a protest of petitioner's appeal, objecting to the requested relief. The Internal Revenue Service (IRS) Office of Appeals (Appeals Office) issued to petitioner a final determination on March 23, 2017, denying her request for relief from joint and several liability under section 6015(b), (c), and (f) for the years at issue. On April 24, 2017, petitioner timely filed a petition to this Court appealing the determination, and on May 30, 2017, intervenor filed a notice of intervention. Trial was held on March 26, 2019, in Milwaukee, Wisconsin.

The Court finds, inter alia, that the trial record does not support petitioner's claims that she was not involved in handling the household expenses or in preparing her and intervenor's joint tax returns for the years at issue. We also find a lack of support in the record for petitioner's claim of spousal abuse. The Court does, however, accept as true that petitioner did not receive a level of significant benefit that would undermine her claim for relief under section 6015(f).

**[\*7]**                                                OPINION

Generally, married taxpayers may elect to file joint Federal income tax returns. Sec. 6013. Section 6013(d)(3) provides that, if a joint return is filed, each spouse is jointly and severally liable for the entire tax due for that year. A requesting spouse may be relieved from joint and several liability under section 6015 if certain conditions are met. Section 6015 provides a requesting spouse with three alternatives for relief from joint and several liability: (1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), or (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f). Except as otherwise provided in section 6015, petitioner, as the taxpayer requesting relief, bears the burden of proof.[6] See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

---

[6]The petition in this case was filed, and the trial was held, before the enactment of sec. 6015(e)(7). See Sutherland v. Commissioner, 155 T.C. __, __ (slip op. at 17) (Sept. 8, 2020) (concluding that subsec. (e)(7) became effective on July 1, 2019, the day of the Taxpayer First Act's enactment). See generally Taxpayer First Act, Pub. L. No. 116-25, 133 Stat. 981 (2019). Sec. 6015(e)(7) changed our scope of review from de novo to the administrative record, with limited exceptions. However, it does not apply to petitions filed before its enactment. See Sutherland v. Commissioner, 155 T.C. at __ (slip op. at 18). Accordingly, our standard of review in this case remains de novo. Robinson v. Commissioner, T.C. Memo. 2020-134, at \*18 n.8 (citing Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011)).

**[*8]** I.     Section 6015(b)

Section 6015(b)(1) provides that a requesting spouse shall be relieved of joint and several liability for a particular year if each of the following requirements is met:  (1) a joint return was filed for the year in issue; (2) the return contains an understatement attributable to an erroneous item of the nonrequesting spouse; (3) the requesting spouse establishes that, in signing the return, he or she did not know and had no reason to know of the understatement; (4) it is inequitable to hold the requesting spouse liable for the deficiency attributable to the understatement; and (5) the requesting spouse's claim for relief is timely. Failure to meet one of these requirements precludes relief under section 6015(b). Alt v. Commissioner, 119 T.C. at 313.

Petitioner does not satisfy the third condition under section 6015(b).  To qualify for section 6015(b) relief, a requesting spouse cannot have had actual knowledge and a reason to know of the understatement at the time she signed the joint return.  Sec. 6015(b)(1)(C).  With respect to the knowledge requirement under section 6015(b)(1)(C), however, the U.S. Court of Appeals for the Seventh Circuit, to which this case is appealable, has adopted a more lenient approach--the "reason to know" standard--in cases where, as here, the understatement results from improper deductions (versus cases involving unreported income).  Resser v.

[*9] Commissioner, 74 F.3d 1528, 1536 (7th Cir. 1996) (quoting Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989)), rev'g and remanding T.C. Memo. 1994-241; Phemister v. Commissioner, T.C. Memo. 2009-201, slip op. at 34. According to the Court of Appeals, the requesting spouse must establish that she did not know or have reason to know that the erroneous deduction would give rise to an understatement. Resser v. Commissioner, 74 F.3d at 1536.

The Court applies a reasonably prudent person standard to evaluate the requesting spouse's knowledge in cases involving both erroneous deductions and unreported income. See Hopkins v. Commissioner, 121 T.C. 73, 77-78 (2003) (involving improper deductions); Butler v. Commissioner, 114 T.C. 276, 283-284 (2000) (involving unreported income), abrogated by Porter v. Commissioner, 132 T.C. 203 (2009). A spouse knew or had reason to know of an understatement if a reasonably prudent person in her position would have known that the return contained an understatement when she signed it. Resser v. Commissioner, 74 F.3d at 1535-1536; Hopkins v. Commissioner, 121 T.C. at 77. The reasonably prudent person standard also imposes a duty of inquiry on the requesting spouse. Resser v. Commissioner, 74 F.3d at 1541; Hopkins v. Commissioner, 121 T.C. at 77-80; Butler v. Commissioner, 114 T.C. at 283-284.

**[\*10]** For understatements resulting from improper deductions, the requesting spouse had reason to know if she had sufficient knowledge of the facts underlying the deductions such that a reasonably prudent person in her position would have seriously questioned whether the deductions were erroneous. Resser v. Commissioner, 74 F.3d at 1536 (quoting Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), aff'g T.C. Memo. 1988-63). In applying the reasonably prudent person standard, we consider four factors: (1) the spouse's level of education, (2) her involvement in the financial and business activities of the family, (3) the presence of unusual or lavish expenses beyond the family's norm, and (4) the nonrequesting spouse's evasiveness or deceitfulness about the family's finances. Resser v. Commissioner, 74 F.3d at 1536. No single factor is controlling. Rogers v. Commissioner, T.C. Memo. 2018-53, at \*103.

Petitioner argues that she did not know or have reason to know of the understated tax when she signed and filed the joint return. She claims to be an unsophisticated taxpayer who "cannot be said to have understood the extent to which receipts, expenses, depreciation, capital items, earnings and profits, deemed or actual dividend distributions, and the proper treatment of Capital City Tent \* \* \* resulted in tax deficiencies for the years" at issue. She asserts further that she did not meaningfully participate in Capital City Tent "other than to provide

[*11] some bookkeeping and office work." We find her claims not credible. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (finding the Court is not required to accept uncorroborated or self-serving testimony as reliable and true); see also Hopkins v. Commissioner, 121 T.C. at 78 n.11 ("An individual cannot rely solely on ignorance of the attendant tax or legal consequences of an item giving rise to a deficiency to satisfy his or her burden under sec. 6015(b)(1)(C).").

Petitioner, a high school graduate, testified that she had "a little bit of banking education", indicating that she had some familiarity with bookkeeping. Intervenor added during trial that petitioner had worked at a bank for a few years. With respect to her role in Capital City Tent for the years at issue, petitioner maintained the business' books and records, prepared and signed sales tax returns and unemployment tax contribution forms on its behalf, and worked with an accountant to prepare its tax returns. Moreover, nothing in the record indicates that intervenor tried to deceive or hide anything from petitioner.[7] On the basis of these factors, we find that petitioner knew or had reason to know of the understatements of tax for the years at issue and, therefore, is not entitled to relief from joint and several liability under section 6015(b).

---

[7]Respondent does not contend, nor does the Court find evidence in the record, that petitioner and intervenor altered their standard of living as a result of the understatements on their joint tax returns for the years at issue.

[*12] II.    Section 6015(c)

Section 6015(c) permits an individual who filed a joint return to elect to limit his or her liability to the portion of the deficiency that is allocable to him or her under section 6015(d).  Sec. 6015(c)(1).  Under section 6015(d), a portion of the deficiency is allocable to the electing spouse if the erroneously reported items giving rise to that portion of the deficiency are allocable to the electing spouse. Sec. 6015(d)(1).  An item is allocated to the individuals filing the joint return "in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year."  Sec. 6015(d)(3)(A); see sec. 1.6015-3(d)(2)(iv), Income Tax Regs. (explaining that, in the event that both spouses owned an interest in a business, "an erroneous deduction item is generally allocated between the spouses in proportion to each spouse's ownership interest in the business").

The election to limit liability under section 6015(c) is effective only if the requesting spouse made a joint return for the taxable year at issue.  Sec. 6015(c)(1).  To be eligible to make an election under section 6015(c), the requesting spouse must have either:  (1) been legally separated or divorced from the nonrequesting spouse at the time of the election, sec. 6015(c)(3)(A)(i)(I), or (2) not been a member of the same household as the nonrequesting spouse at any

**[\*13]** time during the 12-month period ending on the date of the election, sec.

6015(c)(3)(A)(i)(II). The request for relief under section 6015(c) must be made no

later than two years after the IRS began collection actions against the requesting

spouse. Sec. 6015(c)(3)(B).

If the IRS demonstrates by a preponderance of the evidence that the

requesting spouse had actual knowledge, when signing the return, of erroneous

items that are allocable to the nonrequesting spouse and give rise to the deficiency

(or portion thereof), then the requesting spouse is generally not entitled to relief

under section 6015(c) with respect to that deficiency (or portion thereof).[8] Sec.

6015(c)(3)(C). In cases involving erroneous deductions, a spouse is deemed to

have actual knowledge of an item giving rise to a deficiency if she has actual

knowledge of the factual circumstances that made the deductions unallowable.

Phemister v. Commissioner, slip op. at 40 (citing King v. Commissioner, 116 T.C.

198, 204 (2001)); see sec. 1.6015-3(c)(2)(iv), Income Tax Regs. ("Joint ownership

---

[8]The knowledge standard for purposes of sec. 6015(c)(3)(C) is "an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof)." Armour v. Commissioner, T.C. Memo. 2016-129, at \*10-\*11 (quoting Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002)). Put differently, the "actual knowledge" standard subsumes the "reason to know" standard. Wiksell v. Commissioner, T.C. Memo. 1999-32, slip op. at 10, supplementing T.C. Memo. 1998-3, aff'd, 215 F.3d 1335 (9th Cir. 2000).

**[*14]** [of property] is a factor supporting a finding that the requesting spouse had actual knowledge of an erroneous item."). Actual knowledge of the tax laws or legal consequences of the operative facts is not required. Hopkins v. Commissioner, 121 T.C. at 86 (citing King v. Commissioner, 116 T.C. at 204).

Given petitioner's joint ownership of Capital City Tent, her involvement in maintaining Capital City Tent's books and records, her role in preparing and signing tax-related documents on behalf of the business, and her cooperation with an accountant to prepare Capital City Tent's tax returns, we find that petitioner had actual knowledge of the factual circumstances that made the deductions unallowable. See Phemister v. Commissioner, slip op. at 40-41 (concluding that taxpayer wife "possessed actual knowledge of the factual circumstances that made the deductions and resulting losses claimed with respect to the horse activity unallowable", since she "ran the day-to-day operations and was responsible for maintaining records with respect to the activity"). Thus, we conclude that respondent has satisfied his burden of proving by a preponderance of the evidence that petitioner had actual knowledge of the items allocable to intervenor that gave rise to the understatements when she signed the returns. Accordingly, petitioner is not entitled to relief under section 6015(c) for the years at issue.

[*15] III.     Section 6015(f)

Section 6015(f) provides an alternative means for innocent spouse relief for a requesting spouse who does not otherwise qualify for relief under section 6015(b) or (c).  Sec. 6015(f)(1)(B).  Section 6015(f) provides relief from joint and several liability if it is inequitable to hold the requesting spouse liable for any unpaid tax or any deficiency (or any portion thereof) after taking into account all the facts and circumstances of the case.  Sec. 6015(f)(1)(A).  Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that she is entitled to section 6015(f) relief.  Rule 142(a).  Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, sets forth a three-step procedure for evaluating requests for innocent spouse relief: (1) a list of seven threshold requirements that a requesting spouse must satisfy to be eligible for relief,[9] (2) a three-part test for a streamlined determination to grant relief, and (3) if the taxpayer is not entitled to a streamlined determination, a

_____

[9]The seven threshold requirements are:  (1) the parties filed a joint return, (2) relief is not otherwise available under sec. 6015, (3) the claim for relief is timely, (4) no assets were transferred between the spouses as part of a fraudulent scheme, (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse, (6) the requesting spouse did not knowingly participate in the filing of a fraudulent return, and (7) absent certain exceptions, the income tax liability is attributable (in full or in part) to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income.  Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399.

**[*16]** nonexclusive list of factors that the IRS will consider in determining whether it would be inequitable to hold the spouse jointly and severally liable.[10]

Respondent concedes that petitioner has met the threshold requirements; thus, we turn to whether she qualifies for a streamlined determination.

A.    Streamlined Determination

When the threshold conditions have been met, Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, allows a requesting spouse to qualify for a streamlined determination of relief under section 6015(f) if all of the following conditions are met:  (1) the requesting spouse is no longer married to the nonrequesting spouse, (2) the requesting spouse will suffer economic hardship if relief is not granted, and (3) the requesting spouse did not know or have reason to know that there was an understatement or deficiency on the joint income tax return.  As the Court found above, petitioner knew or had reason to know of the items giving rise to the understatement when she jointly filed the tax returns for the years at issue.  See id. sec. 4.02(3)(a), 2013-43 I.R.B. at 400; see also id. sec. 4.03(2)(c)(i)(A), 2013-43 I.R.B. at 401.

_____

[10]Rev. Proc. 2013-34, supra, applies to all requests filed on or after September 16, 2013, and requests pending in any Federal court on or after September 16, 2013.  Id. sec. 7, 2013-43 I.R.B. at 403.

[*17] Notwithstanding the Court's finding above, actual or constructive knowledge may be negated if the nonrequesting spouse abused the requesting spouse or maintained control over the household finances by restricting the requesting spouse's access to financial information such that the nonrequesting spouse's actions prevented the requesting spouse from questioning or challenging the treatment of any items on the joint return. Id. sec. 4.02(3)(a). "Abuse comes in many forms and can include physical, psychological, sexual, or emotional abuse, including efforts to control, isolate, humiliate, and intimidate the requesting spouse, or to undermine the requesting spouse's ability to reason independently and be able to do what is required under the tax laws." Id. sec. 4.03(2)(c)(iv), 2013-43 I.R.B. at 402; see, e.g., Stephenson v. Commissioner, T.C. Memo. 2011-16. This Court takes all facts and circumstances into account in determining the presence of abuse, see Rev. Proc. 2013-34, sec. 4.01, 2013 I.R.B. at 399, and requires substantiation or, at a minimum, specificity with regard to allegations of abuse, see Nihiser v. Commissioner, T.C. Memo. 2008-135. A generalized claim of abuse is insufficient. See Thomassen v. Commissioner, T.C. Memo. 2011-88, aff'd, 564 F. App'x 885 (9th Cir. 2014); Knorr v. Commissioner, T.C. Memo. 2004-212.

**[\*18]** Petitioner indicated on Form 8856 that she suffered from spousal abuse and testified at trial that intervenor abused her verbally by calling her crazy, stating that he would ruin her financially, and blaming her for their tax problems. While any Court takes seriously any allegations of spousal abuse, the history of acrimony between petitioner and intervenor calls into question the weight to be given to petitioner's claims of spousal abuse. The record does not include specific evidence to support her bald allegations of abuse, and the Court finds her claims to be self-serving and not credible. See Tokarski v. Commissioner, 87 T.C. at 77. Furthermore, nothing in the record corroborates petitioner's testimony that intervenor abused her "in any sense to which the tax law or common experience will accord any recognition." Ogonoski v. Commissioner, T.C. Memo. 2004-52, slip op. at 17-18 (analyzing the factors set forth in a predecessor revenue procedure to Rev. Proc. 2013-34, supra). Accordingly, petitioner has failed to show that she is eligible for a streamlined determination.

B.    Equitable Factors

Where, as here, the requesting spouse satisfies the threshold conditions but does not satisfy all of the requirements for a streamlined determination, Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400-403, sets forth seven nonexclusive factors to be considered in determining whether a requesting spouse is entitled to

**[*19]** equitable relief under section 6015(f): (1) whether the requesting spouse is no longer married to the nonrequesting, (2) whether the requesting spouse will suffer any economic hardship if relief is not granted, (3) whether the requesting spouse knew or had reason to know of the item giving rise to the understatement, (4) whether either spouse has a legal obligation to pay the outstanding Federal income tax liability, (5) whether the requesting spouse significantly benefited from the underpayment, (6) whether the requesting spouse has made a good faith effort to comply with the income tax laws in the years following the years for which relief is sought, and (7) whether the requesting spouse was in poor mental or physical health when the returns at issue were filed, when the request for relief was made, or at the time of trial. See Pullins v. Commissioner, 136 T.C. 432, 449-454 (2011). In making a determination under section 6015(f), the Court considers the enumerated factors as well as any other relevant factors. No single factor is dispositive, and "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and circumstances." Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400; see Pullins v. Commissioner, 136 T.C. at 448; Hall v. Commissioner, T.C. Memo. 2014-171, at *38.

**[\*20]**       1.       <u>Marital Status</u>

If the requesting spouse is no longer married to the nonrequesting spouse, this factor will weigh in favor of granting relief. Rev. Proc. 2013-34, sec. 4.03(2)(a), 2013-43 I.R.B. at 400. Since petitioner and intervenor are divorced, this factor weighs in favor of relief.

2.       <u>Economic Hardship</u>

Economic hardship exists if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse's being unable to meet his or her reasonable basic living expenses. <u>Id.</u> sec. 4.03(2)(b), 2013-43 I.R.B. at 401. If denying relief from joint and several liability will not cause the requesting spouse to suffer economic hardship, this factor will be neutral.

Respondent concedes that petitioner will suffer economic hardship if she is denied relief for the years at issue. This factor weighs in favor of relief.

3.       <u>Knowledge or Reason To Know</u>

In an understatement case, if the requesting spouse knew or had reason to know of the item giving rise to the understatement as of the date the joint return was filed, this factor will weigh against relief. <u>Id.</u> sec. 4.03(2)(c)(i)(A). The Court considers the facts and circumstances when determining whether the requesting

**[\*21]** spouse had reason to know of an understatement. Id. sec. 4.03(2)(c)(iii), 2013-43 I.R.B. at 402.

As the Court found above, petitioner knew or had reason to know of the items giving rise to the understatement. This factors thus weighs against relief.

### 4. Legal Obligation

This factor favors relief where the nonrequesting spouse has the sole obligation to pay an outstanding Federal tax liability under a binding divorce decree or other legally binding agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. This factor is neutral where both spouses have such an obligation, or the divorce decree or agreement is silent as to any such obligation. Id.

Following the audit, petitioner and intervenor signed Forms 4549 in which they consented to the assessment and collection of the deficiency amounts, plus penalties and interest. Furthermore, the agreement stipulated that petitioner and intervenor remained jointly and severally liable for the unpaid 2010 and 2011 Federal tax liabilities. This factor is neutral.

### 5. Significant Benefit

Under this factor, the Court considers whether the requesting spouse received a significant benefit, beyond normal support, from the understatement.

[*22] Id. sec. 4.03(2)(e), 2013-43 I.R.B. at 402. "Normal support is measured by the circumstances of the particular parties." Porter v. Commissioner, 132 T.C. at 212. Benefits in excess of normal support carry less weight, however, where the nonrequesting spouse controlled the household or business finances, making this factor neutral. Rev. Proc. 2013-34, sec. 4.03(2)(e). This factor will weigh in favor of granting relief if: (1) the nonrequesting spouse significantly benefited from the unpaid tax and the requesting spouse had little or no benefit, or (2) the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment. Id. Additionally, this Court has considered the lack of significant benefit to the requesting spouse as a factor favoring relief under section 6015(f). Wang v. Commissioner, T.C. Memo. 2014-206, at *40.

Petitioner did not receive a significant benefit beyond normal support from her and intervenor's understatement of their tax liabilities for the years at issue. This factor weighs in favor of relief.

### 6. Compliance

Under this factor, we consider whether the requesting spouse made a good-faith effort to comply with the tax laws for the taxable years following the year for which relief is requested. Rev. Proc. 2013-34, sec. 4.03(2)(f), 2013-43 I.R.B. at 402. This factor will weigh in favor of relief if the requesting spouse is

[*23] in full compliance for the tax years after being divorced from the nonrequesting spouse. Id. sec. 4.03(2)(f)(i), 2013-43 I.R.B. at 402. This factor will weigh against relief if the requesting spouse is not in full compliance with tax laws for the tax years after being divorced from the nonrequesting spouse. Id. This factor will be neutral if the requesting spouse made a good-faith effort to comply with the tax laws for the tax years after being divorced from the nonrequesting spouse but was unable to fully comply. Id. The Court considers the requesting spouse's compliance status at the time of trial. Smith v. Commissioner, T.C. Memo. 2009-237, slip op. at 15 n.5

As of the March 2019 trial, petitioner was in compliance with her Federal income tax return filing obligations. The Court notes, however, that petitioner untimely filed her tax returns for tax years 2012 through 2015 in February 2017 and, shortly thereafter on April 24, 2017, filed a petition to this Court appealing the Appeals Office's final determination denying her relief under section 6015. Given these facts, we cannot say that petitioner made a good-faith effort to comply with Federal income tax laws in the years following the years at issue. See Pullins v. Commissioner, 136 T.C. at 453 (concluding that the taxpayer's filing of her 2004 and 2005 tax returns the weekend before her September 2009 trial failed to

[*24] prove that she had made a good-faith effort to comply with Federal income tax laws). This factor weighs against granting relief.

### 7. Health

This factor may weigh in favor of relief if the requesting spouse was in poor mental or physical health when the tax returns were filed, when the request for relief was made, or at the time of trial. Rev. Proc. 2013-34, sec. 4.03(2)(g), 2013-43 I.R.B. at 403; see also Pullins v. Commissioner, 136 T.C. at 454. If the requesting spouse was in neither poor physical nor poor mental health, this factor is neutral. Rev. Proc. 2013-34, sec. 4.03(2)(g).

The parties agree that petitioner was not in poor physical or poor mental health at any of the above times. This factor is neutral.

### C. Conclusion

In summary, three of the factors weigh in favor of granting relief, while two weigh against relief. The remaining two factors are neutral. Our decision whether relief is appropriate, however, is not based on a simple tally of factors. See, e.g., Hudgins v. Commissioner, T.C. Memo. 2012-260, at *40. Rather, our decision is heavily influenced by the totality of the circumstances. After weighing all the facts and circumstances, we are not persuaded that petitioner is entitled to relief under section 6015(f). Considering that petitioner was intimately involved with

**[*25]** Capital City Tent, knew or had reason to know of the items giving rise to the understatement, and failed to make a good-faith effort to comply with her Federal income tax return filing obligations, we conclude that it would not be inequitable to deny petitioner relief from joint and several liability under section 6015(f) for the years at issue.

We have considered all other arguments of the parties and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.